Richard Lee JOLLY, Appellant,

v.

The STATE of Texas, Appellee.

No. 09-88-299 CR.

Court of Appeals of Texas,
Beaumont.

June 28, 1989.

Rehearing of Appellant Overruled
July 24, 1989.
Discretionary Review Refused
Oct. 25, 1989.

John S. Holleman, Livingston, for appellant.

Terry Brown, Livingston, for State.

## OPINION

BROOKSHIRE, Justice.

The Appellant was convicted by a jury of the offense of aggravated assault after he had pleaded not guilty. Punishment was assessed by the jury at ten years confinement plus a $5,000.00 fine.

The indictment alleged that Appellant on or about February 24, 1988, did intentionally and knowingly cause serious bodily injury to the Complainant by cutting and stabbing her with a knife and kicking and stomping her with his feet and hitting her with his hands and fists and with a tree limb. The indictment was in the conjunctive. The charge, however, was in the disjunctive.

The application paragraph instructed the jury that if they found beyond a reasonable doubt that Richard Lee Jolly did intentionally or knowingly cut and stab the victim with a knife; or kick and stomp the victim with his feet; or hit the said victim with his hands and fists; or with a tree limb; and thereby cause serious bodily injury; then the jury was to find the defendant guilty of aggravated assault.

*Zanghetti v. State,* 618 S.W.2d 383 (Tex. Crim.App.1981) held that the trial court can charge on multiple theories in the disjunctive form of the offense even though the indictment alleged the offense by different manners and means and theories in the conjunctive form.

The different phases of an offense—that is the different ways (manners and means) by which the offense may be committed—may all be alleged in the same count (if not repugnant to each other) and the proper way of joining such is by the word "and". Moreover, under such joinder, proof of any one of such phases (any one of such manner and means) so joined is sufficient. *Zanghetti, supra.*

■ The Appellant advances that fundamental error was committed by submitting a charge which allowed the jury to convict the Appellant upon theories which were not raised by the evidence. We do not agree. The record reflects a rather gruesome and brutal episode of beatings against the victim, showing all the manners and methods set out in the indictment.

We conclude that each of the theories in the application paragraph has substantial evidence of probative force which sustains it with the *possible exception of the stabbing of the victim* with a knife. Although the victim testified in effect that she was not stabbed, we decide that the record clearly demonstrates that there were a number of cuts and slashes which were committed with a knife. The gravamen of the attack and the real challenge to the application paragraph, is that the only evidence of serious bodily injury sustained by the victim was two broken arms and one broken leg. Appellant argues there was no evidence that the *victim was actually stabbed.* This contention, if correct, will not result in a reversal. Appellant also argues that there was no evidence in the record of bodily injury which created a substantial risk of death or caused death or serious permanent disfigurement. Appellant concludes by saying that there is no evidence that the Appellant ever stomped the victim with his feet, and likewise, there

is no evidence in the record that the Appellant ever hit the victim with his hand.

We disagree with these contentions. We decide that there is evidence in the record proving serious cutting and slashing. The difference between serious cuts and numerous slashes and stabbing, we decide, is an ethereal, non-practical, non-pragmatic distinction, if it is a distinction at all. The pictorial evidence in the case, inter alia, we decide, raises the issue of serious bodily injury. There is evidence of the victim having been kicked with a steel-toed boot. At the date of trial the victim still had a cast on one of her legs, one of her arms was still not healed. Her left arm drooped lower than normal. The attacks and assaults went on for quite a long time. The record reflects these events took place in a wooded area, occurring quite a distance from the highway. After the attacks and assaults subsided, the victim was dragged a fairly long distance through the woods to the side of a highway.

On the question of serious bodily injury, the State's exhibits in the form of photographs clearly show slashes and cuts about the face of the victim. We concluded that these slashes and cuts amount to stabbing. State's Exhibit No. 2 shows both of her arms in some type of cast. Other State's exhibits demonstrate a cast on one leg and multiple bruises and injuries to the leg that was not in a cast. As to the leg in the cast, the bleeding was so profuse and so protracted that the blood oozed through the cast.

The victim took the stand and clearly and definitely identified the Appellant as the person who attacked and assaulted her. She said that after he finished drinking a beer and they were about a quarter of a mile or so along the wooded path that the Appellant started beating on the victim. The victim said that the Appellant started beating her first with his fists and then the Appellant started kicking the victim. We hold beating her with his fists includes his hands. The Appellant had on steel-toed black boots. The Appellant also had a knife. The knife was identified by the victim. The victim testified that the Appel-

lant started slashing her with the knife and that she had scars on her arms and back from the slashings. She also had some cuts on her face. She also testified that she was attacked with tree branches. She was asked:

"Q  Did he use only one tree limb or did he use more than one tree limb?

"A  *A lot of them. Some of them broke off and he said go find some that won't break.*

. . . .

"Q  What occurred on your arms, *other than being cut and stabbed as you have shown the jury?*

"A  *Well, my left one was fractured and my right arm was like shattered. They put pins in it.*

"Q  *You have pins in your right arm?*

"A  *Yeah.*"  (Emphasis added.)

Then the victim actually showed the jury where the pins were in her arm. Her arm had been in a cast or a splint for about four weeks. The victim was asked:

"Q  Did you suffer any injuries on your legs?

"A  *Yeah. My right leg was broken in half.*

"Q  And was it necessary for the doctors to place a cast upon your legs?

"A  Yes.

"Q  *Do you in fact have that cast upon your leg even now?*

"A  *Yes.*

"Q  *Would you pull your pants leg up, if you can, and show the jury the leg that you say was broken?*

"A  *Here.* (Indicating.)"  (Emphasis added.)

She was asked to explain the red marks on her own forehead. The victim said they resulted from knife cuts. She identified a certain State's exhibit and stated that each one of her arms had been placed in a cast and that she had to undergo surgery before these casts were placed. At the time of trial, the victim pulled or rolled up the leg of her pants to demonstrate before the jury that the cast was still on her broken leg. She identified State's Exhibit No. 3 and recognized the same. It was a photo-graph of her left leg and it showed various discolorations which were bruises from the tree branches. She testified that she could not walk when she had the cast across her foot. She had been confined to bed for two and a half months. The cast on her right leg extended beyond the knee joint up to her hip. She also recognized State's Exhibit No. 11 which was a picture of a syringe. It was Richard's syringe. She swore that Richard Jolly had told her that he was going to make her take a bunch of it until she died. The "bunch of it" referred to crystal mash. She described the beating as so severe that the pain was very bad. Later she became numb. She swore that she had lost or had sustained serious impairment to the use of her right leg. At the time of trial she maintained that her left arm would not go all the way down. The arm had to be rebroken and reset a second time.

Dr. Kenneth Gaspon was a witness for the State. He was an emergency room physician. He was a duly licensed medical doctor. He gave his somewhat extensive educational history. Dr. Gaspon was the emergency room physician that treated the victim. At first he noticed scratches about her body and bruises on both arms and legs and that both arms and legs were in splints that the emergency medical service personnel had applied. X-rays were taken. Both elbows were broken at what he referred to as the "funny bone, or the crazy bone". In her right lower leg both bones were broken, and one of the bones had penetrated to the outside. The doctor classified this break as a compound fracture. There was a bone broken in her right hand. The physician classified her injuries as major. He stated that her prognosis would be a protracted period with potential permanent injuries.

At the punishment stage Richard Lee Jolly was called to the stand in his own behalf. He was asked this question:

"Q  Did the jury reach the right result? Not what you want, but as to what happened, as best you remember?

"A  Yes."

The Appellant testified that he was under the influence of various intoxicants and controlled substances on the night in question. He testified that these were methamphetamine, alcohol and marihuana.

After both the State and defendant rested, at the guilt or innocence stage, the objection that the defendant leveled against the charge of the court was that the charge authorized the jury to return a conviction if they find any one of the manners that the State has pleaded, rather than requiring the jury to find all of the manners and means that the State has pleaded. The defendant further objected that the charge as to the lack of evidence on each manner or means and the application paragraph was worded disjunctively, while the indictment was worded conjunctively. Appellant objected that the charge authorized the jury to find the defendant guilty by less proof than what the State had pleaded. Under the record we cannot agree. But see, *Zanghetti, supra.*

Also, the objection did not with reasonable specificity point out to the trial court on what basis the jury could authorize a conviction on any one of the manner or means pleaded by the State, rather than requiring the jury to find all the means that the State had pleaded, we decide that the doctrine set out in *Almanza v. State,* 686 S.W.2d 157 (Tex.Crim.App.1984) is applicable. Appellant has failed to show egregious harm.

Appellant conceded that he could not remember everything that happened during the fairly long duration when the assaults took place. Because of the severe beatings, the victim could not remember every detail. From the circumstantial evidence and from the pictures and the real or demonstrative evidence, as well as the testimony of the officers, we decide that the State did prove all the manners and means that were set out in the indictment and that were in the application paragraph of the charge. We hold that a kick is comparable to a stomp. We hold that the serious injury inflicted by a steel-toed boot satisfies the means of "with his feet". We hold that the means of using his fist included his

hands. We think the tree limb allegation was amply proved.

The cumulative evidence of the injuries, we think, sustains the verdict in that the assaults of the Appellant upon the victim created a substantial risk of death and both protracted loss and impairment of the function of a bodily member or organ.

█ The Appellant also argues that the trial court erred in overruling his motion for a mistrial wherein he claims it was shown that the State had not followed the court's discovery ruling to disclose a summary reflecting the criminal records of all persons that the State intended to call at the trial. The paramount argument under this point is that the State's case rested upon the credibility of the victim. At the trial, the victim stated that she had not had any speed or drugs since the day of her beating.

After the Appellant was found guilty, the Appellant's attorney discovered or claimed to discover that the victim had spent five days the previous week in jail in California and was charged, he said, with the sale of marihuana. Appellant moved for a mistrial, stating that the trial court had deprived this Appellant of his opportunity to impeach the State's star witness' credibility which deprived the Appellant also of effective assistance of counsel. The prosecutor stated that he had learned on the Tuesday before the trial that the victim had been arrested and had been in custody. The representations on this issue consist of the statements made to the court by the attorneys. The prosecutor stated that it had been determined that the victim had been arrested and was in custody, but had not been convicted of any offense. The prosecutor took the position that since she had not been convicted, then her incarceration was not available to the defense for impeachment. The State argued, we think correctly, that only final convictions can be used for this purpose.

We note that *TEX.R.CRIM.EVID. 608(b)* provides in general and in relevant part that specific instances of the conduct of a witness for the purpose of attacking his or her credibility, other than conviction of a

crime, may not be inquired into on cross-examination of the witness or even proved by extrinsic evidence. *Rule 608(b)* refers to *TEX.R.CRIM.EVID. 609. Rule 609(a)* provides in substance that generally for the purpose of attacking the credibility of the witness *the evidence that he has been convicted of a crime* shall be admitted if elicited from him or if the same is established by a public record.

We do not rely in whole or in part on *TEX.CODE CRIM.PROC.ANN. art. 37.07, sec. 3(a)* (Vernon Supp.1989). Section 3(a), as we read it, is relevant and germane only as to the prior criminal record of the defendant, his general reputation and his character. Article 37.07, section 3(a) simply does not address the criminal record, if any, of the victim. No quarrel is made with the concept that the State should reveal the criminal records of the State's witnesses. However, this discovery motion and the order granting the same were filed October 4, 1988. The case was tried on October 12 and 13, 1988. The record clearly reflects that the State did not know anything about the incarceration of the victim until just before the trial. The prosecutor was correct, we think, in stating that the victim had not been convicted of any offenses in California; hence, her incarceration there was not available to the defense for impeachment purposes. Perhaps it would have been the better practice for the State to have informed the defense of the victim's having been in jail but the wording of the discovery motion and certainly the wording of the order did not, under this record, compel the State to disclose this matter. In any event, we find no error.

Appellant contends that the trial court erred in admitting into testimony that a certain Milwaukee Best beer can was found in the Appellant's vehicle over objection. The victim testified that she and the Appellant had stopped and that a six-pack of Milwaukee's Best beer had been purchased. She further testified that at the location of the assault they walked into the woods and the Appellant had been drinking beer and began beating her. Apparently at least four of the beers had been taken into the woods.

■ The Investigator of the Polk County Sheriff's Department testified that when he arrived at the scene the Appellant was not a suspect. Later during the investigation the Investigator ordered the Appellant to be arrested because the Appellant became very uncooperative and disorderly, using vile profanity. Appellant was described as being extremely agitated and started cursing various persons at the scene other than the peace officers. Because of his arrest, his vehicle was impounded. An inventory was made several days later. An unopened can of beer was noted. The record shows that it was the policy or custom of the Polk County Sheriff's Department to inventory a vehicle *as soon as reasonably practical after it was impounded.* The Appellant's objection to the testimony concerning the recovery of this beer can found in the Appellant's vehicle was on the grounds that an improper inventory search was made to the Appellant's vehicle. It is interesting to note that the Appellant raises for the first time in his appellate brief the contention that his arrest for his actions at the scene on the side of the highway was an unlawful arrest. The record shows probable cause to arrest the Appellant for his actions and his repeated use of abusive, profane and vulgar language directed at various officers and also at the ambulance attendants. In view of the testimony of the victim, we simply are unable to see how harm was visited upon the Appellant under this record by the Milwaukee Best beer can. Certainly its existence under this record had no significance in the establishment of any element of the State's case against the Appellant.

■ The last point of error is that the trial court committed error in submitting the case to the jury because there was insufficient evidence to show the cause of the serious bodily injury of the victim. The facts and argument under this point of error number four are extremely brief. The Appellant takes the position that the only evidence of serious bodily injury to the victim was two broken arms and a broken leg. We disagree. Her injuries were much

more extensive. Then the Appellant argues that there was no evidence or no reasonable inferences for the jury to determine what caused these injuries. Again, we disagree. Overruling each of the Appellant's points of error we affirm the judgment and sentence below.

AFFIRMED.

BURGESS, Justice, concurring.

I concur in the result. I do not adopt the majority's analysis of the point of error concerning the State not disclosing the victim's recent arrest. Appellant's motion, which was granted by the court, required the State to furnish "[a] summary reflecting the criminal records of all persons the State of Texas intends to call at trial." While there were no qualifying or limiting words, the majority approves the definition of "criminal record" urged by the State, i.e., final convictions. In this context, criminal record is what is generally known as a "rap" sheet or a listing of all arrests and dispositions, including both pending charges and convictions. This is a discovery definition, not an admissibility definition. If the State had intended to rely upon a limited definition and furnish only prior convictions, they should have addressed that to the trial court when the ruling was made. Under a limited circumstance, it would be permissible to cross-examine a witness on pending charges to show possible bias or motive to testify on behalf of the State. *Massengale v. State*, 653 S.W.2d 20 (Tex.Crim.App.1983). I have no quarrel with the majority's holding of no error since the pending charge in California could not have been, in any manner, relevant on the issue of motive or self-interest. *Smith v. State*, 516 S.W.2d 415 (Tex.Crim.App.1974). I simply do not adopt their analysis on this, perhaps, minor point and would hold the State was under an obligation to furnish the entire criminal record, not simply final convictions.