# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00541-CR

**Robert Thomas, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE 390TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-DC-17-208383, THE HONORABLE BOB PERKINS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Robert Thomas was charged with aggravated assault. *See* Tex. Penal Code § 22.02(a). The indictment also contained enhancement paragraphs alleging that Thomas had previously been convicted of four felony offenses. *See id* § 12.42. At the end of the guilt-or-innocence phase, the jury found Thomas guilty of the charged offense. Thomas elected to have the district court assess his punishment. The district court found the enhancements to be true and sentenced Thomas to thirty years' imprisonment. On appeal, Thomas challenges the sufficiency of the evidence supporting his conviction. We will affirm the district court's judgment of conviction.

## BACKGROUND

Thomas was charged with committing aggravated assault against Carla Thompson. The indictment alleged two alternative ways by which Thomas committed the offense. First, the indictment alleged that Thomas intentionally, knowingly, or recklessly "cause[d] serious bodily

injury to . . . Thompson, by stabbing or cutting her with a knife or sharp object." Second, the indictment alleged that Thomas intentionally, knowingly, or recklessly "cause[d] bodily injury to . . . Thompson, by stabbing her with a knife" and used and exhibited "a deadly weapon, to-wit: a knife, during the commission of the said assault."[1]

During the trial, several witnesses testified, including Thompson, Thomas, and Sarah Jordan, who was a crime-scene specialist. Various exhibits pertaining to the alleged assault were admitted into evidence at trial, including Thompson's medical records, a recording of the 911 call that she made shortly after the incident, and photographs of the injuries that she sustained.

In her testimony, Thompson explained that she went to visit her cousin on the day in question, that her cousin was dating Thomas, that he was at the apartment, that he was drinking alcohol, that he became "very intoxicated," that he became angry, and that he insulted her. Next, Thompson related that when she reached for her beer, she felt something hit her but was unsure initially what it was, but she stated that she knew that she had been "cut" because she could taste blood. Further, Thompson recalled that the wound was on her temple and that she lost a lot of blood. Thompson also testified that she left the apartment to call the police and that as she was leaving, she heard someone say, "Hide the knife," and heard her cousin ask Thomas, "Why did you do that? Why did you cut her?" Moreover, Thompson explained that she was admitted into the hospital for her injury and that her wound required thirteen stitches to close.

After Thompson finished testifying, Sarah Jordan was called to the stand. In her testimony, Jordan explained that she was a crime-scene specialist; that she observed "reddish-

---

[1] The indictment also contained the following alternative allegation: Thomas committed aggravated assault by "intentionally and knowingly threaten[ing] . . . Thompson with imminent bodily injury" and using and exhibiting "a deadly weapon, to-wit: a knife, during the commission of the said assault." However, the State later abandoned that alternative allegation, and the alternative language was not included in the jury charge.

brown stains" in multiple areas of the home, including the floor and the bedroom door; that there "was blood located throughout the apartment"; and that the police discovered a knife under the stove when they pulled it away from the wall.

In his testimony, Thomas related that Thompson walked into the bedroom while he was in there eating cantaloupe, that he told her to leave, that she grabbed his cane and hit him "in the head with it," and that he "slashed out" in response, causing her to "g[e]t cut." When describing the incident again later, Thomas admitted that he injured Thompson but stated that he did not act "intentionally" and only lashed out in self-defense in response to her striking him. Further, Thomas admitted that the knife found under the stove was the knife that he used to injure Thompson and that he threw the knife "down there" when he learned that the police had been called.

After considering the evidence presented at trial, the jury convicted Thomas of the charged offense.

**DISCUSSION**

On appeal, Thomas contends that the evidence presented during trial "was legally insufficient to support the jury's" conviction for aggravated assault "under either" of the alternative ways "alleged in the indictment."

As set out above, the indictment listed two alternative ways by which Thompson allegedly committed aggravated assault. First, the indictment alleged that Thomas intentionally, knowingly, or recklessly caused serious bodily injury by stabbing or cutting Thompson. Second, the indictment alleged that Thomas intentionally, knowingly, or recklessly caused bodily injury by stabbing Thompson while using and exhibiting a deadly weapon (a knife). *See* Tex. Penal

3

Code §§ 22.01 (providing that person commits assault if he "intentionally, knowingly, or recklessly causes bodily injury to another"), .02(a) (stating that person commits aggravated assault if he commits assault and "causes serious bodily injury to another" or "uses or exhibits a deadly weapon during the commission of the assault"); *see also Landrian v. State*, 268 S.W.3d 532, 533 (Tex. Crim. App. 2008) (explaining that "gravamen of" aggravated assault "is 'causing bodily injury'"). Because the indictment alleged alternative ways of committing the same offense, the jury did "not have to be unanimous on the aggravating factors of whether" the assault was an aggravated one because it resulted in "'serious' bodily injury or" because "appellant used a deadly weapon." *See Landrian*, 268 S.W.3d at 533. "[W]hen multiple theories are submitted to the jury, the evidence is sufficient to support a conviction so long as the evidence is sufficient to support conviction for one of the theories submitted to the jury." *Guevara v. State*, 152 S.W.3d 45, 52 (Tex. Crim. App. 2004).

Under a legal-sufficiency standard of review, appellate courts view the evidence in the light most favorable to the verdict and determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). When performing this review, an appellate court must bear in mind that it is the factfinder's duty to weigh the evidence, to resolve conflicts in the testimony, and to make "reasonable inferences from basic facts to ultimate facts." *Id.*; *see also* Tex. Code Crim. Proc. art. 36.13 (explaining that "jury is the exclusive judge of the facts"). Moreover, appellate courts must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). Furthermore, appellate courts presume that conflicting inferences were resolved in favor of the conviction and "defer to that

4

determination." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). In addition, courts must bear in mind that "direct and circumstantial evidence are treated equally" and that "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an actor" and "can be sufficient" on its own "to establish guilt." *Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd).

In reviewing the legal sufficiency of the evidence supporting a conviction, appellate courts consider "*all* evidence that the trier of fact was permitted to consider, regardless of whether it was rightly or wrongly admitted." *Demond v. State*, 452 S.W.3d 435, 445 (Tex. App.—Austin 2014, pet. ref'd) (emphasis added). The evidence is legally insufficient if "the record contains no evidence, or merely a 'modicum' of evidence, probative of an element of the offense" or if "the evidence conclusively establishes a reasonable doubt." *Kiffe*, 361 S.W.3d at 107 (quoting *Jackson*, 443 U.S. at 320). Furthermore, reviewing courts "measure the sufficiency of the evidence by the so-called hypothetically correct jury charge, one which accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *See DeLay v. State*, 465 S.W.3d 232, 244 n.48 (Tex. Crim. App. 2014).

On appeal, Thomas does not dispute that he injured Thompson with a knife or that he had the requisite mental state for the offense and in fact concedes in his brief that the evidence shows that he injured her. Instead, Thomas presents a limited sufficiency challenge to the alternative ways by which he was alleged to have committed aggravated assault. Regarding the first way, Thomas contends that the evidence is insufficient to support his conviction because the evidence did not establish that Thompson sustained *serious* bodily injury during the assault. *See*

5

Tex. Penal Code § 1.07(a)(46) (defining "[s]erious bodily injury"). On the contrary, Thomas argues that the evidence established that Thompson sustained only bodily injury. *See id.* § 1.07(a)(8) (defining "[b]odily injury"). Regarding the second way, which alleged that Thompson suffered bodily injury rather than serious bodily injury, Thomas asserts that the evidence is insufficient to support his conviction because the evidence did not establish that he stabbed Thompson and instead urges that the evidence showed that he cut Thompson.

As support for his assertion that the evidence is insufficient to show that Thompson was stabbed, Thomas points to a portion of her testimony in which she stated that she "got cut" trying to grab her beer and to a portion of his own testimony in which he stated that he "slashed out. That's how she got cut." Similarly, Thomas refers to another portion of Thompson's testimony and to portions of her medical records indicating that she received thirteen stitches, which he asserts indicates that she was cut, not stabbed. Finally, Thomas notes that the first allegation in the indictment was amended to add the phrase "or cutting" to allege that he caused serious bodily injury by "stabbing or cutting," contends that the need for the amendment indicates that the evidence did not establish that a stabbing occurred, and highlights that no such amendment was made to the second allegation.

As an initial matter, we note that although Thomas insists that there is a significant distinction between the terms "cut" and "stab," those words have similar meanings. For example, the word "stab" is defined as "to wound or pierce by the thrust of a pointed weapon," and the word "cut" is defined as "to penetrate with or as if with an edged instrument." *See Merriam-Webster Collegiate Dictionary* 285, 1139 (10th ed. 2000). Additionally, various courts of appeals have recognized the similarity of those terms. *See Daugherty v. State*, 216 S.W.2d 200, 200-01 (Tex. Crim. App. 1948) (on reh'g) (stating that "[e]vidently a stab with a knife and a cut

6

with a knife mean the same thing, although there might be a difference in the angle upon which the knife penetrated"); *Dominguez v. State*, 355 S.W.3d 918, 921, 922 (Tex. App.—Fort Worth 2011, pet. ref'd) (rejecting argument that evidence was insufficient to support conviction because indictment alleged that victim was cut but that evidence showed victim was stabbed and explaining that "the English language" did not support defendant's contention); *Guerrero v. State*, 964 S.W.2d 32, 37 (Tex. App.—San Antonio 1997, pet. ref'd) (referring to various similar definitions for "stab" and "cut" and noting that "it is common knowledge that an individual who is stabbed with a knife is cut"); *Jolly v. State*, 774 S.W.2d 94, 95 (Tex. App.—Beaumont 1989, pet. ref'd) (explaining that "[t]he difference between serious cuts and numerous slashes and stabbing, we decide, is an ethereal, non-practical, non-pragmatic distinction, if it is a distinction at all"). Accordingly, it is not entirely clear why the jury could not have reasonably inferred from the portions of testimony that Thomas highlights that Thompson was stabbed. Similarly, it is not entirely clear why the description of Thompson's treatment as requiring thirteen stitches would foreclose a reasonable inference that she was stabbed. *Cf. Richardson v. State*, No. 01-86-00618-CR, 1987 WL 6514, at *2 (Tex. App.—Houston [1st Dist.] Feb. 12, 1987, no pet.) (not designated for publication) (noting in sufficiency review that "stab" wound "required 16 stitches").

Moreover, in addition to the evidence summarized above, other evidence was presented to the jury regarding the nature of Thompson's injury. For example, on the recording of Thompson's call to 911 that was played for the jury, she stated multiple times that Thomas "stabbed" her on her temple. In addition, Thompson's medical records referred to the injury as a stab wound on at least six occasions. Regarding one of those instances, the records categorized the injury as a "Category I" injury requiring immediate treatment because it was a "[s]tab wound to [the] head." Further, another portion of Thompson's medical records documented that she

7

described her injury as being "stabbed in the forehead." Additionally, another entry stated that the injury was a "[l]arge 8cm laceration do[w]n[] to bone." Moreover, photographs of the deep injury to Thompson's face spanning from her temple to the midpoint of her forehead were presented to the jury and showed that the wound went down to the bone.

Given our standard of review and in light of the entirety of the record before this Court as well as the reasonable inferences that can be made from that record, we must conclude that a rational jury could have concluded that Thomas stabbed Thompson and overrule Thomas's sufficiency challenge to the evidence pertaining the second allegation contained in the indictment. Having overruled the evidentiary challenge listed above, we need not address Thomas's other sufficiency challenge to the evidence regarding the first allegation listed in the indictment. *See* Tex. R. App. P. 47.1; *Guevara*, 152 S.W.3d at 52.

For all of these reasons, we overrule Thomas's issue on appeal.

### CONCLUSION

Having overruled Thomas's issue on appeal, we affirm the district court's judgment of conviction.

_____

Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Smith

Affirmed

Filed:   August 27, 2019

Do Not Publish

8