Johnny Eugene CARROLL, Appellant,

v.

The STATE of Texas, Appellee.

No. 1368–94.

Court of Criminal Appeals of Texas.

Jan. 24, 1996.

Ken J. McLean, Roy G. Romo, Houston, for appellant.

Ernest Davila, Assist. Dist. Atty., Houston, Robert A. Huttash, State's Atty., Austin, for the State.

*OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW*

BAIRD, Judge.

Appellant was convicted of murder and sentenced to thirty years confinement. The Court of Appeals affirmed. *Carroll v. State,* No. A14–93–01141–CR, 1994 WL 605870 (Tex.App.—Houston [14th Dist.] delivered November 3, 1994) (Not published). We granted review to determine whether the Court of Appeals erred in holding a State's

witness may not be cross-examined concerning pending criminal charges.[1] We will reverse and remand.

## I.

## THE RIGHT OF CONFRONTATION

### A. Historically

The right of confrontation has ancient roots. *Greene v. McElroy*, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959). Over two thousand years ago the Roman Governor Porcius Festus reported to King Agrippa: "It is not the manner of the Romans to deliver any man up to die before the accused has met his accusers face to face, and has been given a chance to defend himself against the charges." *Coy v. Iowa*, 487 U.S. 1012, 1015–1016, 108 S.Ct. 2798, 2800, 101 L.Ed.2d 857 (1988) (quoting Acts 25:16). *See also*, 5 *Wigmore on Evidence* (3d ed. 1940) Sec. 1364 (origin of right to confront witnesses).

The right of confrontation was also recognized in English common law. *Salinger v. United States*, 272 U.S. 542, 548, 47 S.Ct. 173, 175, 71 L.Ed. 398 (1926). *See also*, Pollitt, *The Right of Confrontation: Its History and Modern Dress*, 8 J.Pub.L. 381, 384–388 (1959) (describing confrontation of witnesses in England). Initially, the right of the accused to confront witnesses was recognized in trials for treason. *Wigmore*, at 123. Arguably, the most notorious treason trial in England was that of the Sir Walter Raleigh, accused of conspiring to overthrow the King of England. *See*, F. Heller, *The Sixth Amendment to the Constitution*, 104 (1968). *See also, Pollitt*, at 388. Raleigh was charged with treason after a third party, Cobham, confessed under torture, to conspiring with Raleigh. At trial, Raleigh was denied the opportunity to confront Cobham and Cobham's statement was used to convict and ultimately execute Raleigh. *Pollitt*, at 388–389. It was common during these times for an accused to be tried upon written "evidence

which consisted solely of *ex parte* affidavits and depositions." *California v. Green*, 399 U.S. 149, 156, 90 S.Ct. 1930, 1934, 26 L.Ed.2d 489 (1970); *Dowdell v. United States*, 221 U.S. 325, 330, 31 S.Ct. 590, 592, 55 L.Ed. 753 (1911) (Purpose of confrontation clause was to exclude accusation by written deposition.); *Mattox v. United States*, 156 U.S. 237, 242–243, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895) (Confrontation provision enacted to prevent accusation of crime by written deposition at trial.). By the seventeenth century the right to confront witnesses had grown in favor. *Coy v. Iowa*, 487 U.S. 1012, 1015–16, 108 S.Ct. 2798, 2800, 101 L.Ed.2d 857 (1988). *See also*, 5 J. Wigmore, Evidence Section 1395, p. 122 (3d ed. 1940). In *Duke of Dorset v. Girdler* (1720), Finch's Prec. Ch. 531, the right of confrontation was recognized as being fundamental to a fair trial: "The other side ought not be deprived of the opportunity of confronting the witnesses and examining them publicly, which.has always been found the most effectual method for discovering the truth." *Wigmore*, at 123. (Internal quotations omitted.)

Although the right of confrontation had gained wide acceptance in England, it was not originally recognized in the United States Constitution. *Ex parte Milligan*, 71 U.S. (4 Wall) 2, 120, 18 L.Ed. 281 (1866). *See also*, Freely, Malcom M., *The Oxford Companion to the Supreme Court of the United States*, p. 935 (1992). Its recognition did not occur until the ratification of the Sixth Amendment. U.S. Const., Amend. VI. *See, Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 590, 100 S.Ct. 2814, 2834–2835, 65 L.Ed.2d 973 (1980) (Brennan, J., concurring); *California v. Green*, 399 U.S. at 175, 90 S.Ct. at 1943 (Harlan, J., concurring); *United States v. Barracota*, 45 F.Supp. 38, 38 (S.D.N.Y.1942).[2] The United States Supreme Court has since held the right to confrontation is "[o]ne of the *fundamental guarantees of life and liberty* ... long deemed so essential for the due protection of

---

1. Appellant's ground for review states:
     Whether the Court of Appeals erroneously held that appellant was properly precluded from cross-examining a state's witness about a pending aggravated robbery charge.

2. The Sixth Amendment provides in pertinent part: "the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI.

life and liberty that it is *guarded against legislative and judicial action by provisions in the Constitution of the United States* and in the constitutions of most if not of all the States composing the Union." [3] *Kirby v. United States,* 174 U.S. 47, 55–56 19 S.Ct. 574, 577, 43 L.Ed. 890 (1899). Indeed, the right of confrontation helps to establish a criminal justice system "in which the perception as well as the reality of fairness prevails." *Lee v. Illinois,* 476 U.S. 530, 540, 106 S.Ct. 2056, 2062, 90 L.Ed.2d 514 (1986).[4]

## B. The Extent of this Right

■ The right to confront one's accuser necessarily includes the right to cross-examine. As the Supreme Court held in *Davis v. Alaska:*

> The main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination.* The opponent demands confrontation, not for the idle purpose of gazing upon the witness, or of being gazed upon by him, but for the purpose of cross-examination, which cannot be had except by the direct and personal putting of questions and obtaining immediate answers.

*Id.,* 415 U.S. 308, 315–316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974) (quoting 5 J. Wigmore, Evidence Section 1395, p. 123 (3d ed. 1940). (Emphasis in original.) *See also, Douglas v. Alabama,* 380 U.S. 415, 419, 85 S.Ct. 1074, 1077, 13 L.Ed.2d 934 (1965) (Jurors were entitled to make informed judgment as to the weight to assign to witness' testimony.); *and, Smith v. Illinois,* 390 U.S. 129, 132, 88 S.Ct. 748, 750, 19 L.Ed.2d 956 (1968) (citing *Alford v. United States,* 282 U.S. 687, 692–694, 51 S.Ct. 218, 219–220, 75 L.Ed. 624 (1931) ("Prejudice ensues from a denial of the opportunity to ... put the weight of [the witness'] testimony and his credibility to the test, without which the jury cannot fairly appraise them.") In short, confrontation is the check and balance that ensures fairness in our adversary system of justice, and cross-examination is the essential means by which opponents test evidence proffered against them. *Davis,* 415 U.S. at 316, 94 S.Ct. at 1110.

■ Cross-examination serves three general purposes: cross-examination may serve to identify the witness with his community so that independent testimony may be sought and offered concerning the witness' reputation for veracity in that community; cross-examination allows the jury to assess the credibility of the witness; and, cross-examination allows facts to be brought out tending to discredit the witness by showing that his testimony in chief was untrue or biased. *Alford v. United States,* 282 U.S. 687, 691–92, 51 S.Ct. 218, 219, 75 L.Ed. 624 (1931) (citing *Tla-Koo-Yel-Lee v. United States,* 167 U.S. 274, 17 S.Ct. 855, 42 L.Ed. 166 (1897)). Cross-examination is by nature exploratory and there is no general requirement that the defendant indicate the purpose of his inquiry. *Ibid.* Indeed, the defendant should be granted a wide latitude even though he is unable to state what facts he expects to prove through his cross-examination. *Ibid.*

## C. Limitation of Cross-examination

■ The Constitutional right of confrontation is violated when appropriate cross-examination is limited. *Hurd v. State,* 725 S.W.2d 249, 252 (Tex.Cr.App.1987). The scope of appropriate cross-examination is necessarily broad. A defendant is entitled to pursue all avenues of cross-examination reasonably calculated to expose a motive, bias or interest for the witness to testify. *Lewis v. State,* 815 S.W.2d 560, 565 (Tex.Cr.App.1991). When discussing the breadth of that scope we have held,

> ... Evidence to show bias or interest of a witness in a cause covers *a wide range and the field of external circumstances from which probable bias or interest may be inferred is infinite.* The rule encompasses *all facts and circumstances, which when tested by human experience, tend to show*

---

3. All emphasis is supplied unless otherwise indicated.

4. The right of confrontation was extended to State criminal proceedings through the Four-teenth Amendment. *Pointer v. Texas,* 380 U.S. 400, 407, 85 S.Ct. 1065, 1070, 13 L.Ed.2d 923 (1965).

*that a witness may shade his testimony* for the purpose of helping to establish one side of the cause only.

*Jackson v. State,* 482 S.W.2d 864, 868 (Tex. Cr.App.1972) (quoting *Aetna Insurance Company v. Paddock,* 301 F.2d 807, 812 (5th Cir.1962). This broad scope necessarily includes cross-examination concerning criminal charges pending against a witness and over which those in need of the witness' testimony might be empowered to exercise control. *Lewis,* 815 S.W.2d at 565 (Defendant entitled to question witness about pending indictment and any benefit expected or promised in return for testifying.); *and, Miller v. State,* 741 S.W.2d 382, 389 (Tex.Cr.App.1987) (Defendant may question whether witness is testifying to receive lighter sentence.).[5] A witness' pecuniary interest in the outcome of the trial is also an appropriate area of cross-examination. *Shelby v. State,* 819 S.W.2d 544, 550–551 (Tex.Cr.App.1991) (Defendant entitled to question child victim's mother concerning her pecuniary interest in a lawsuit filed against the apartment complex where child was sexually assaulted.).

■ Nevertheless, there are several areas where cross-examination may be inappropriate and, in those situations the trial judge has the discretion to limit cross-examination. *Delaware v. Van Arsdall,* 475 U.S. 673, 682, 106 S.Ct. 1431, 1436–1437, 89 L.Ed.2d 674 (1986). Specifically, a trial judge may limit cross-examination when a subject is exhausted, or when the cross-examination is designed to annoy, harass, or humiliate, or when the cross-examination might endanger the personal safety of the witness. *See generally, Van Arsdall,* 475 U.S. at 679, 106

S.Ct. at 1435 (Trial judge may exercise discretion to prevent harassment, prejudice, confusion of the issues, the witness' safety, and repetitive or marginally relevant interrogation.); *Smith,* 390 U.S. at 132–134, 88 S.Ct. at 750–751; *and, Alford, supra. See also,* Tex.R.Crim.Evid. 608, 609, 404 and 405.

## II.

### THE INSTANT CASE

In the instant case, the State presented two witnesses who testified they were present at the time of the murder. Charles Fitzgerald testified he and the victim were at a bar when they saw appellant. Appellant showed Fitzgerald a pistol and shortly thereafter got into an argument with the victim. Fitzgerald and the victim moved to a table and appellant followed. Appellant shot the victim with the pistol, and continued shooting as the victim moved toward the back of the bar. Although Fitzgerald testified he only consumed two beers, the officers who interviewed him the night of the murder testified Fitzgerald was intoxicated. Appellant impeached Fitzgerald's testimony with proof of his intoxication at the time of the killing.[6]

Herman Russell testified appellant and the victim argued over a mutual girlfriend. When the victim indicated the girlfriend had moved in with him, appellant pulled a pistol and told the victim he should not talk to the girl. Appellant then put the pistol into his waistband and Russell went to a back room. In less than a minute Russell heard a gunshot and saw the victim running while holding his arm. Russell testified appellant continued to shoot the victim.[7]

5. Judge Keller states that under our analysis, failure to allow cross-examination regarding a pending charge is always error. Her statement is entirely consistent with *Miller v. State,* 741 S.W.2d 382, 389 (Tex.Cr.App.1987), where the Court unanimously held:

Thus, it is *always* proper through cross-examination to place a testifying co-defendant in his proper setting as to what might motivate him to testify for the State and against the accused. Therefore, evidence that a witness who testifies against an accused has pending criminal charges against him, *is always* admissible against him in order to show a possible motive for testifying for the State and against the accused.

Judge Keller does not cite or otherwise mention *Miller* in her dissent. Nevertheless, as discussed *infra,* there are areas where cross-examination may be properly limited.

6. Herman Russell further testified he believed Fitzgerald had been drinking before coming to the bar.

7. Additionally, appellant testified he did not display his weapon. Instead, he and the victim were discussing the mutual girlfriend when the victim used profanity and reached into his pants as if to retrieve a weapon. Appellant shot the victim because the girlfriend had informed him that the victim "had something that would take care of [him]."

Appellant sought to impeach Russell's testimony with evidence that Russell was currently incarcerated and awaiting trial on an aggravated robbery charge and that he had several prior felony convictions.[8] The State asked the trial judge to prohibit appellant from conducting such cross-examination, contending such evidence was not relevant. Appellant contended Russell's testimony had a potential for bias because Russell's testimony in the instant case might favorably affect the outcome in the aggravated robbery case. Appellant further contended Russell's previous convictions could be used to enhance the felony charge, thus increasing the punishment range and creating a greater likelihood for bias. The trial judge agreed with the State and prohibited the testimony. The Court of Appeals affirmed, holding that Tex. R.Crim.Evid. 608(b) specifically prohibited the use of the pending aggravated robbery charge for impeachment.[9] *Carroll, supra;* slip op. pg. 3.[10]

### III.

### APPLICATION

There exists a long line of federal and state authority holding a pending criminal charge is an appropriate area of cross-examination. *Davis,* 415 U.S. at 316–317, 94 S.Ct. at 1110–1111; *Callins v. State,* 780 S.W.2d 176, 196 (Tex.Cr.App.1986); *Carmona v. State,* 698 S.W.2d 100, 102–103 (Tex.Cr.App. 1985); *Harris v. State,* 642 S.W.2d 471, 476 (Tex.Cr.App.1982) (*citing Randle v. State,* 565 S.W.2d 927 (Tex.Cr.App.1978)); *Evans v. State,* 519 S.W.2d 868 (Tex.Cr.App.1975); *Lewis,* 815 S.W.2d at 565; *and, Miller,* 741

S.W.2d at 389. Indeed, the instant situation differs little from that confronted by the Supreme Court in *Alford* where a prosecution witness testified to Alford's actions and incriminating statements. On cross-examination, Alford sought to elicit testimony that the witness was in federal custody "for the purpose of showing whatever bias or prejudice he may have." *Id.,* 282 U.S. at 690, 51 S.Ct. at 219. However, the trial judge refused to allow such evidence because it was not based upon a final conviction. *Id.,* 282 U.S. at 690–691, 51 S.Ct. at 219.

The Supreme Court reversed, holding cross-examination is a matter of right. *Ibid.* Although the extent of cross-examination is subject to the sound discretion of the trial judge, the trial judge abuses that discretion when he prevents appropriate cross-examination. And inquiry into a witness' potential bias arising from incarceration was appropriate. *Id.,* 282 U.S. at 693, 51 S.Ct. at 220. Indeed, the Supreme Court held Alford should have been allowed to cross-examine the witness to demonstrate the "testimony was biased because given under a promise or expectation of immunity, or under the coercive effect of his detention by officers [who were] conducting the present prosecution." *Ibid.* Finally, the Court noted: "Even if the witness were charged with some other offense by the prosecuting authorities, [Alford] would be entitled to show by cross-examination that [the witness'] testimony was affected by fear or favor growing out of [the witness'] detention." *Ibid.*[11]

In *Harris,* the defendant sought to question the State's witness concerning her pend-

---

**8.** At the time of appellant's trial, Russell had been incarcerated in the Harris County Jail for four months.

**9.** Tex.R.Crim.Evid. 608(b) provides:

*Specific Instances of Conduct.* Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence.

**10.** Inexplicably, the Court of Appeals also held: "Appellant cites Tex.R.Crim.Evid. 609(a) and *Theus v. State,* 845 S.W.2d 874, 879 (Tex.Cr.App. 1992), as authority for admission of the pending

charge." *Carroll, supra;* slip op. pg. 3. However, we have carefully reviewed the briefs on direct appeal and find that neither appellant nor the State relied on Rule 609(a) or *Theus* in support of this point(s) of error. Rather, the parties relied on Rule 609(a) and *Theus* in the first point of error relating to Russell's prior *final* convictions.

**11.** Even though the instant case is identical in every major respect to *Alford,* neither of the dissenters distinguish *Alford* from the instant case. *Alford* is the seminal case on the Constitutional right of confrontation and must be considered in every serious analysis dealing with that right. We also note that the Court of Appeals failed to mention *Alford.*

ing juvenile charges. The trial judge sustained the State's objections to such cross-examination. *Id.*, 642 S.W.2d at 473–475. On appeal the defendant contended he was entitled to cross-examine the witness concerning any probable bias or interest in her testimony. Relying upon *Alford*, we reversed stating the defendant "had an unqualified right to ask ... the only witness linking him with the offense, whether she too had been 'accused' of the offense on trial, and to receive her answer...." *Id.*, 642 S.W.2d at 479. The jury was entitled to the "whole picture" in order to evaluate and judge the witness' credibility. *Ibid.*

■■■ *Alford* and *Harris* control our resolution of the instant case. *See also, Coody v. State*, 812 S.W.2d 631 (Tex.App.—Houston [14th Dist.] 1991). Appellant's cross-examination was clearly an attempt to demonstrate that Russell held a possible motive, bias or interest in testifying for the State. Appellant's inquiry into Russell's incarceration, his pending charge and possible punishment as a habitual criminal, was appropriate to demonstrate Russell's potential motive, bias or interest to testify for the State. A defendant is permitted to elicit any fact from a witness intended to demonstrate that witness' vulnerable relationship with the state. *Alford*, 282 U.S. at 692, 51 S.Ct. at 219; *and*, *Harris*, 642 S.W.2d at 480.

■■■ The State contends appellant's cross-examination was impermissible because no agreement existed between the State and Russell which might affect Russell's motive to testify for the State. However, the existence of such an agreement is not determinative. *Carmona*, 698 S.W.2d at 103. What is determinative is whether appellant was allowed to demonstrate any possible bias or interest that Russell may hold to testify on the State's behalf. In other words, it is possible, even absent an agreement, that Russell believed his testimony in this case would be of later benefit. As we held in *Spain v. State*,

... an effective cross-examination encompasses more than just the opportunity to elicit testimony to establish the existence of certain facts. The cross-examiner should be allowed to expose the limits of the witness' knowledge of relevant facts, place the witness in his proper setting, and test the credibility of the witness. The failure to affirmatively establish the fact sought does not prevent the cross-examination from having probative value in regard to the witness' credibility.

*Id.*, 585 S.W.2d 705, 710 (Tex.Cr.App.1979) *citing Alford*, 282 U.S. at 692, 51 S.Ct. at 219. *See, Saunders v. State*, 572 S.W.2d 944, 948–949 (Tex.Cr.App.1978).[12]

Finally, the Court of Appeals' holding that appellant was unable to impeach Russell under Rule 608(b) is erroneous for at least two reasons. First, appellant's cross-examination concerning Russell's incarceration was not an inquiry into a specific instance of conduct. Instead, appellant's cross-examination focused on Russell's possible motive, bias or interest in testifying for the State. To understand this distinction we draw upon our decisional authority, namely, *Ramirez v. State*, 802 S.W.2d 674 (Tex.Cr.App.1990), and *Moody v. State*, 827 S.W.2d 875 (Tex.Cr.App. 1992), which involved the interpretation and application of Rule 608(b). In *Ramirez*, the mother of an eight-year-old victim testified she did not believe appellant sexually assaulted the victim. The State cross-examined the mother regarding her prior use of heroin suggesting that, at the time of the offense, she was under its influence and unaware of what happened to her child. The State offered no evidence to show the mother either previously used heroin, or was under its influence at the time of the incident. *Id.*, 802 S.W.2d at 676. Relying on Rule 608(b), we held the State was improperly allowed to question the mother about a specific instance of conduct. *Ibid.*

Likewise, in *Moody* the defendant sought to cross-examine a deputy sheriff with evidence of a civil suit in which the deputy was

---

12. Judge Keller does not cite or distinguish these cases in her dissent. Instead, she states, without the benefit of any authority, there must be some showing that the pending charge influenced the

witness. *Post*, 916 S.W.2d at 505. Her contention is belied by the above mentioned cases. There is no requirement of a showing of influence.

sued for civil rights violations. Moody contended the suit was relevant to the deputy's character for truth and veracity and was a reflection of his "testimony" and "credibility." *Moody,* 827 S.W.2d at 891. However, Moody never explained how a civil suit, involving an anonymous prisoner, indicated any possible motive or bias of the deputy against the appellant. *Ibid.* We held the cross-examination was an attack on the deputy's credibility using a specific instance of conduct and, therefore, prohibited under Rule 608(b).

■ In the instant case the Court of Appeals improperly relied upon Rule 608(b) because appellant did not try to cross-examine Russell about a specific instance of conduct. In other words, appellant did not seek to cross-examine Russell about the underlying facts which gave rise to the aggravated robbery charge. Rather, appellant attempted to inform the jury that Russell had a vulnerable relationship with the State at the time of his testimony. *Alford,* 282 U.S. at 692, 51 S.Ct. at 219; *and, Harris,* 642 S.W.2d at 480. Consequently, the Court of Appeals erred in relying on Rule 608(b) to uphold the trial judge's limitation on appellant's cross-examination of Russell.

Second, although we see no conflict between the right to cross-examine a witness about a pending charge and Rule 608(b), if such a conflict existed, the constitutional right of confrontation would prevail.[13] In fact, the Supreme Court was confronted with such a conflict in *Davis* where a state statute prohibited the defendant from cross-examining a prosecution witness in an effort to show possible bias deriving from the witness' probationary status. The *Davis* Court held the defendant's right of confrontation was para-

mount and Alaska's interest in protecting the witness' privacy had to yield to such a vital constitutional right as the effective cross-examination for bias of an adverse witness. *Davis,* 415 U.S. at 319–320, 94 S.Ct. at 1112. *See also, Kirby v. United States,* 174 U.S. at 55–56, 19 S.Ct. at 577 (Any legislative or judicial action which seeks to limit the accused's fundamental right to confrontation must not circumvent the Sixth Amendment.); *and, State v. McPherson,* 851 S.W.2d 846, 850 (Tex.Cr.App.1992) (holding that under the Supremacy Clause, the Eighth Amendment prevails over Tex.Code Crim.Proc.Ann. art. 37.07, § 1(a)).[14]

Accordingly, the judgment of the Court of Appeals is reversed and the case is remanded to that Court to conduct a harm analysis pursuant to *Shelby,* 819 S.W.2d at 551.

WHITE, J., concurs in the result.

MEYERS, Judge, concurring.

In this case the charges pending against the State's witness originated in the same jurisdiction and were brought by the identical authorities as those for which the appellant stands accused. I therefore agree with the decision of our lead opinion to allow the defendant to use these charges for impeachment on cross-examination of this witness. However, in future contexts, should these charges emanate from another jurisdiction or authority, I would hold that release of the information to the jury is subject to a discretionary ruling of the trial court under Rule 403 of the Texas Rules of Criminal Evidence. With these additional comments, I join the opinion of the Court.

WHITE, J. joins this opinion, but only concurs in the opinion of the Court.

---

13. The United States Constitution provides:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, under the Authority of the United States, *shall be the supreme Law of the Land;* and the Judges in every State shall be bound thereby, *any Thing in the Constitution or Laws of any State to the contrary notwithstanding.*
U.S. Const. art. VI, c. 2.

14. Both of the dissenters mistakenly believe this case is controlled by Rule 608(b). The dissenters fall into the same error as the Court of Appeals.

The Court of Appeals resolved this point of error on the basis of Rule 608(b) but neither appellant nor the State relied on, or even cited, the Rule in their briefs relating to this point of error. Instead, appellant made a purely constitutional argument and the State responded in kind. (Judge Keller seems to note this in n. 1, *post* at 505, but never discusses the constitutional dimension of appellant's argument.)

Additionally, the dissenters, in their attempts to find no error, cites factors which are relevant *not* to a determination of error, but relevant to the issue of harm. *See, Shelby, supra.* Such an analysis is best left for the Court of Appeals.

MANSFIELD, Judge, dissenting.

Appellant was convicted of murder and was sentenced to thirty years' confinement in the Texas Department of Criminal Justice—Institutional Division. Appellant's conviction was affirmed by the Fourteenth Court of Appeals. *Carroll v. State*, No. A14–93–01141–CR, 1994 WL 605870 (1994). We granted appellant's petition for discretionary review to determine if the Court of Appeals erred in holding that a State's witness may not be cross-examined about a pending aggravated robbery charge against him. As I believe the court of appeals' holding is correct, I respectfully dissent.

The State presented two witnesses who testified they were in the bar at the time the murder was committed. Charles Fitzgerald testified appellant showed him a pistol and observed him arguing with Robert Brzowski, the victim. Fitzgerald testified further appellant followed him and Mr. Brzowski to another table, shot Mr. Brzowski with the pistol and continued shooting at Mr. Brzowski as he fled toward the back of the bar. Appellant introduced evidence, including the testimony of two police officers who interviewed Fitzgerald after the shooting, that Fitzgerald was intoxicated at the time of the shooting.

The second witness, Herman Russell, the bartender, testified and gave essentially the same version of what occurred as Fitzgerald. Russell testified appellant and Mr. Brzowski argued over a mutual female acquaintance and things went down hill from there, concluding with appellant shooting and killing Mr. Brzowski.

At trial, appellant sought to impeach Russell with evidence of prior felony convictions, i.e., two convictions for cattle theft from 1962 and 1965. Though conceding Texas Rule of Criminal Evidence 609(b) would ordinarily bar use of the convictions for impeachment as the convictions were too remote (over ten years old), appellant claimed they were relevant as they could be used to enhance punishment if Russell were convicted of his pending charge. Additionally, appellant sought to impeach Russell with evidence of a pending aggravated robbery charge and that he was currently incarcerated awaiting trial

on that charge. Appellant alleged Russell was potentially biased because his testimony in the present case might affect the outcome in his pending aggravated robbery case, and he was entitled to show the jury Russell's testimony might be influenced by the charge pending against him.

At the hearing, Russell testified there had been no deals made with the State concerning the pending aggravated robbery charge in relation to his testimony in the present case. He testified he had already given a statement regarding the present case (the killing occurred on April 11, 1992) prior to being arrested on the aggravated robbery charge (the robbery allegedly was committed in 1988). Finally, he testified his testimony in the present case would not be affected by the case pending against him, which was scheduled to be prosecuted in a different court. The trial court denied appellant's motion, and Russell testified without being impeached by evidence of his prior convictions or of the pending aggravated robbery charge.

In *Ramirez v. State*, 802 S.W.2d 674 (Tex. Crim.App.1990), we held that Texas Criminal Evidence Rule 608(b) does not allow a witness to be impeached, for purposes of attacking his credibility, by proof of specific instances of conduct, other than conviction of crimes as provided by Rule 609, either on cross-examination or by extrinsic evidence. *Ramirez*, at 676. We emphasized that Rule 608(b) is much more restrictive as to impeachment of witnesses by instances of conduct other than convictions than its federal counterpart, and that any federal cases discussing the exception to federal rule 608(b) are not instructive. *Ramirez*, at 677. We followed our ruling in *Ramirez* in *Moody v. State*, 827 S.W.2d 875, 891 (Tex.Crim.App. 1992). See also, Tex.Code Crim.Proc., Art. 38.29 (repealed Sept. 1, 1986).

We did hold, under now-repealed Art. 38.29, that trial courts should allow the accused latitude to show any fact, including pending charges, which would tend to establish bias or motive of a witness testifying against him. *Carmona v. State*, 698 S.W.2d 100 (Tex.Crim.App.1985); *Green v. State*, 676

S.W.2d 359 (Tex.Crim.App.1984); *Miller v. State,* 741 S.W.2d 382 (Tex.Crim.App.1987). It is important to note that these cases were decided prior to the effective date of Rule 608(b). However, we held in these cases that the trial court has discretion in limiting cross-examination and does not have to permit the accused to show, by impeaching a witness with evidence of a pending unrelated charge, the witness' bias or motive to testify falsely. Furthermore, we implied the decision of the trial court on this issue shall be subject to harmless error analysis under Texas Rule of Appellate Procedure 81(b)(2). See *Alexander v. State,* 740 S.W.2d 749, 763 (Tex.Crim.App.1987).

In the present case, the trial judge conducted a hearing on appellant's motion in limine to permit him to cross examine Russell concerning his prior convictions and his pending charge to show bias for motive to testify falsely. Russell testified he had made no "deals" with the State concerning his testimony and that his testimony would not be affected by the charge pending against him. Appellant also had available Russell's prior statement, given before Russell was arrested on the aggravated robbery charge. This prior statement could have been used for impeachment purposes under Rule 612 had his trial testimony been inconsistent with that prior statement. The trial court chose to believe Russell's testimony at the hearing which, as the sole judge of the credibility of witnesses at a hearing, the trial court has discretion to do. *Alvarado v. State,* 853 S.W.2d 17, 23 (Tex.Crim.App.1993); *Meek v. State,* 790 S.W.2d 618 (Tex.Crim.App.1990). Appellant fails to demonstrate the trial judge abused his discretion in overruling appellant's motion and we have held that, where as here, the record supports the decision of the trial court, we will defer to that decision on appeal. *Alvarado, supra,* at 23.

Appellant cites *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), in support of his claim that the Confrontation Clause of the U.S. Constitution requires that he be permitted to show any fact, including a pending charge, which would tend to establish bias or motive of a witness (i.e. Russell) testifying against him. The majority, I respectfully assert, reads *Davis* in a too-broad manner.

In *Davis,* counsel for petitioner was denied the opportunity to cross-examine a State's witness as to his status as a probationer, which counsel alleged would tend to show possible motive or bias on the part of the witness. The Supreme Court held "petitioner was thus denied the right of *effective* cross-examination which would be constitutional error of the first magnitude and no amount of showing or want of prejudice would cure it." *Davis,* at 318, 94 S.Ct. at 1111.

The present case differs markedly from the facts of *Davis.* First, the witness in *Davis* was on probation resulting from a recent adjudication of delinquency in a juvenile court and likely could have been impeached with that adjudication under Rule 609(d) had this been a Texas case. Second, unlike in *Davis,* appellant in the present case had available to him, under Rule 612, for impeachment purposes, Russell's statement taken at the time of the killing and before he was arrested on the aggravated robbery charge. Third, in the present case, a hearing was held at which the witness (Russell) testified that he would testify truthfully, he would not be affected by his pending charge as to his testimony and no "deal" had been made with the State concerning his testimony. No such examination of the witness (Green) for bias or motive took place in *Davis.* Fourth, a juvenile adjudication is a final determination by a court and is analogous to a conviction. In the present case the witness had merely been charged with a crime and had not been even tried, much less been convicted. Given these differences, appellant's right to an *effective* cross-examination was not denied.[1]

There is little doubt—notwithstanding Rule 608(b)—*Davis* mandates that a criminal defendant be permitted to impeach a State witness on cross-examination with evidence

---

1. It should also be noted that Russell's testimony was essentially identical to the testimony of the other witness, Fitzgerald.

of a pending charge against the witness where a deal concerning the witness' testimony with the State existed or was under discussion. Similarly, *Davis* would be implicated where, unlike in the present case, the defendant had no other reasonable means to impeach the witness (e.g. by a prior statement if inconsistent with his testimony) or had not been afforded a hearing by the court at which he could support his claim of bias or motive of the witness which could be shown only by allowing him to cross-examine the witness—before the jury—as to a pending charge.

Justice Stewart, in his concurring opinion in Davis, wrote: "In joining the Court's opinion, I would emphasize that the Court neither holds nor suggests that the Constitution confers a right in every case to impeach the general credibility of a witness through cross-examination about his past delinquency adjudications or criminal convictions." *Davis*, at 321, 94 S.Ct. at 1112–13. At issue in the present case is a pending charge—*not* a conviction. I would affirm the judgment of the court of appeals. I respectfully dissent.

KELLER, Judge, dissenting.

The majority maintains that Russell's pending criminal charge was not a "specific instance of conduct" subject to R. 608(b) because it was not his commission of aggravated robbery that appellant sought to cross-examine him about but his vulnerable relationship with the State on account of that conduct. According to the majority, incarceration for a pending criminal charge is not a "specific instance of conduct." Op. at p. 500. This interpretation conflicts with both the language of the rule and prior caselaw.

If, as the majority argues, underlying criminal conduct is a "specific instance of conduct" but incarceration for the resulting charge is not (because the charge is not conduct of the accused), then it follows that criminal conduct underlying a conviction is a "specific instance of conduct," but the conviction itself is not (because a conviction is not conduct of the accused). This reasoning, however, belies the language of the rule. R. 608(b) provides:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, *other than conviction of crime as provided in Rule 609,* may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence.

(Emphasis added). Necessarily, then, prior convictions in general are a species of "specific instances of conduct" and are admissible only as specifically provided in R. 609. Thus, the majority's definition of "conduct" is seen to be too narrow; R. 608(b) intends that "conduct" be defined broadly.

This conclusion is also supported by prior caselaw. At least one other court of appeals, relying upon the above-emphasized language in R. 608(b), has stated that incarceration for pending criminal charges cannot be used for impeachment purposes. *Jolly v. State,* 774 S.W.2d 94, 97–98 (Tex.App.—Beaumont 1989, pet. refused). Moreover, we have addressed the very analogous situation of deferred adjudication. Like incarceration on pending charges, deferred adjudication on pending charges shows the witness' status as a result of a specific instance of conduct, and therefore, should be admissible under the majority's reasoning. But, this Court has indicated that, absent confrontation clause concerns, a pending deferred adjudication may not be used for impeachment purposes because it is not a final conviction. *Jones v. State,* 843 S.W.2d 487, 496 (Tex.Crim.App.1992), *cert. denied,* 507 U.S. 1035, 113 S.Ct. 1858, 123 L.Ed.2d 479 (1993). *Callins v. State,* 780 S.W.2d 176, 196 (Tex.Crim.App.1986) (opinion on court's own motion for rehearing), *cert. denied,* 497 U.S. 1011, 110 S.Ct. 3256, 111 L.Ed.2d 766 (1990). Similarly, according to the majority's reasoning, evidence that a witness is a defendant in a civil lawsuit would not itself be a specific instance of conduct so long as the evidence did not concern the details of the civil rights violations. But we have held that evidence that a witness was a defendant in a civil lawsuit alleging the deprivation of civil rights was inadmissible under R. 608(b). *Moody v. State,* 827 S.W.2d 875, 890–891 (Tex.Crim.App.1992). Finally, interpretation of the civil rule is at odds with the majority's reasoning. The corresponding civil rule is identical to the criminal rule.

*See* Tex.R.Civ.Ev. 608(b). It has been held that a party may not introduce, for impeachment purposes, a document that outlines an agreement to cooperate with law enforcement authorities in a criminal investigation and an agreement to enter a guilty plea at some future date. *Allied Chemical Co. v. DeHaven*, 824 S.W.2d 257, 265–266 (Tex. App.—Houston [14th Dist] 1992, no writ).

Hence, cross-examination regarding the pending charge was, at least for purposes of R. 608(b),[1] properly disallowed. This does not end the matter, though, because of the "vulnerable relationship," to which the majority refers, that exists between the State and a person the State has charged with an offense. The Sixth Amendment does, as the majority says, prevail over R. 608(b) if the two are in conflict. When a witness may be biased against the accused because of a pending criminal charge, the accused should be allowed to cross-examine the witness about that charge in order to allow the jury to determine whether the witness' testimony was influenced by that fact. But, in other contexts, we have traditionally required that there be some showing that the specific instance of conduct proffered reveals bias or influence. *See Lewis v. State*, 815 S.W.2d 560, 565 (Tex.Crim.App.1991), *cert. denied*, 503 U.S. 920, 112 S.Ct. 1296, 117 L.Ed.2d 519 (1992) (no showing that revealing details of the offense would show further bias not already shown by revealing pendency of the charges). *Callins*, 780 S.W.2d at 196 (no showing that deferred adjudication may have influenced the witness' testimony). Under the majority's analysis the failure to allow cross-examination regarding a pending charge is always error.[2] I agree that, ordinarily, the mere existence of a pending charge gives rise to an inference that the witness may have been influenced. But in some cases, additional facts in the record may show that such an inference is not warranted. If the latter is the case, and the defendant fails to otherwise make some showing that the pending charge may have influenced the witness, then the trial court does not abuse its discretion in disallowing cross-examination on that subject.[3]

In this case, Russell was charged with aggravated robbery *after* he gave the police his statement regarding the offense with which appellant was charged. Russell's earlier statement was entirely consistent with his testimony at appellant's trial. One cannot infer from the mere existence of the pending charge that it may have influenced Russell's testimony because any motive for helping the State arose after Russell reported his version of the events. Appellant has not otherwise shown that the pending charge may have influenced Russell's testimony at trial.[4]

When a witness' testimony corresponds with his statement given prior to the point at which the motive for bias arose, and the defendant does not otherwise show that the pending charge may have influenced the witness' testimony at trial, I believe that it is not an abuse of discretion to disallow cross-examination regarding an unrelated pending criminal charge that is alleged to be the

---

1. A close examination of the "long line" of authority cited by the majority reveals that these authorities rely upon *constitutional confrontation clause analysis* to establish an "exception" to a statutory prohibition against impeachment based upon pending criminal charges. *See Carmona v. State*, 698 S.W.2d 100, 102–104 (Tex.Crim.App. 1985), relying upon *Parker v. State*, 657 S.W.2d 137, 139 (Tex.Crim.App.1983). *Harris v. State*, 642 S.W.2d 471, 475–480 (Tex.Crim.App.1982). *Randle v. State*, 565 S.W.2d 927, 930–931 (Tex. Crim.App.1978). *Evans v. State*, 519 S.W.2d 868, 871–873 (Tex.Crim.App.1975).

2. This Court has never held that a pending criminal charge is *always* admissible against a witness to show bias, in spite of the majority's reference in n. 5 to dicta which suggests otherwise. In fact, in at least one instance, we have held that prohibiting questioning concerning a pending criminal charge, under the particular facts of the case, did not violate the Sixth Amendment's confrontation clause. *See Carmona*, 698 S.W.2d at 104 (where defendant was otherwise afforded a thorough and effective cross-examination, and the bias and prejudice of the witness was so patently obvious).

3. Although the cases cited by the majority (including *Alford*) do not require a showing that the pending charge influenced the witness, neither do they have this case's distinguishing facts.

4. In fact, the testimony showed that there was no deal between the State and Russell. Though that fact may not be determinative, it is relevant.

motive for bias. Such are the facts in this case.

Accordingly, I dissent.

McCORMICK, P.J., joins.