11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Joaquin
Banda

Appellant

Vs.                   No. 11-04-00109-CR -- Appeal from Comanche County

State
of Texas

Appellee

 

Joaquin Banda appeals his conviction by a jury of
the offense of arson of a habitation. 
The jury assessed his punishment at 10 years in the Institutional
Division of the Texas Department of Criminal Justice and a fine of $5,000.  The jury recommended probation of the
confinement and fine.  Accordingly, the
trial court placed Joaquin on community supervision for a term of 10
years.  Joaquin contends in 6 issues that
the evidence is factually insufficient to support his conviction and that the
trial court erred in excluding evidence of insurance coverage on the house that
was burned and in excluding evidence of a suspicious structure fire that had
occurred near the burned residence.   We
affirm.

Joaquin contends in issue six that the evidence is
factually insufficient to support his conviction.  In a factual sufficiency review, we view all
of the evidence in a neutral light, and we will set the verdict aside only if
the evidence is so weak that the verdict is clearly wrong and manifestly unjust
or if the contrary evidence is so strong that the standard of proof beyond a
reasonable doubt could not have been met. 
See Zuniga v. State, 144 S.W.3d 477 (Tex.Cr.App. 2004).

Angel Banda, Joaquin=s
brother, testified that Joaquin started living with him and his family in
January or February 2002 because Joaquin said that he was out of a job and
could not find one.  Angel indicated that
he assigned Joaquin the bedroom to the left at the top of the stairs. He
acknowledged that prior to October 14, 2002, Joaquin started staying in the
room downstairs that had been made into a barroom.  Angel stated that he did not know why Joaquin
started staying downstairs.








Angel testified that on the afternoon of October
14, 2002, he went into the barroom to board up a broken window when he
discovered a shotgun on the couch.  He
said that he was upset because it was accessible to his young children.  He indicated that, when he contacted his
brother by telephone, his brother told him that the shotgun was fine where it
was.  He related that at that time he
asked for his key back and told his brother to get his stuff out.  He stated that he went to his mother=s house and had basically the same
conversation with his brother in person.

Angel testified that, at 9:27 p.m., he called his
mother=s house
and told someone there to tell Joaquin to come get his stuff.  He said that he arrived home about 9:30 p.m.
and told his wife that Joaquin was coming to move his stuff.  He related that he thought Joaquin showed up
about 9:35 or 9:40 p.m., right after he got home.  He indicated that Joaquin was accompanied by
their sister.  He stated that, after
arriving, Joaquin started getting his stuff out of the house.  

Angel testified that Joaquin and their sister made
several trips elsewhere to unload Joaquin=s
belongings.  Angel said that about 10:15
p.m., a friend, Charles Kolb, arrived to return an extension cord he had
borrowed.  He indicated that he, his
wife, and Kolb stayed in the kitchen talking. 
He stated that they were still in the kitchen and were still visiting at
10:30 p.m. when Joaquin left for the last time. 
Angel indicated that he knew when Joaquin left because he saw someone
run down the stairs.  He emphasized that
during Athis
period of time@ he never
saw anyone else except Joaquin go upstairs. 
He also indicated that he had not gone upstairs prior to the discovery
of the fire and was not aware of anyone else having done so.

Angel testified that, after Joaquin left, Kolb
started smelling smoke.  Angel indicated
that,  they then began looking for a
fire.  He said that, when he ran upstairs
to look, he saw an orange glow and saw that there was a fire there.  He related that the orange glow was in the
room that his brother had been in.  He
stated that Kolb called the fire department.

Brenda Banda, Angel=s
wife, testified that she let Joaquin into the house around 9:30 p.m. on October
14, 2002.  She said that he told her he
had come to get his things.  She stated
that Kolb had come to the house about 10:00 p.m. or maybe a little after.  She indicated that she had seen Joaquin going
up and down the stairs.  She insisted
that she had not seen anyone else come into the house.  She acknowledged that she did not believe Joaquin
went back upstairs after coming down to get his food out of the kitchen just
before leaving.








Brenda testified that, after Joaquin left, she
smelled something like wood burning.  She
said that Angel went up the stairs, felt the door, and said that it was
hot.  She indicated that she did not at
anytime see anyone besides Joaquin go upstairs and that she would have known if
Angel or Kolb had gone upstairs.  She acknowledged
that Joaquin did not have any cans, bottles, or other containers with him when
he arrived at the house.  She stated that
he was a little upset.  She acknowledged
that, when Joaquin left the house, she did not see him run down the stairs.  As previously noted, she testified that he
had been in the kitchen just before he left.

Kolb testified that, when he came to the house on
the evening in question, he did not see anyone else inside the house other than
Angel, Brenda, and Joaquin.  He said
that, to the best of his memory, he was in the presence of Angel and Brenda at
all times after he arrived at the house and that he never saw either of them go
upstairs.  He estimated that he had been
there about 30 minutes before discovering the fire.

Sam Walter Cunningham testified that he was the
fire chief for the City of Comanche.  He
indicated that the alarm for the fire went out at 10:40 p.m.  He said that, when he arrived at the scene,
he saw a glow and light smoke in the upstairs window in front.

Kevin Burch testified that he is the city fire
marshal for Comanche.  He indicated that
his main duty as fire marshal is to investigate all fires within the city
limits of Comanche.  He stated that Angel
told him his brother had set the fire. 
He said that Angel told him how Joaquin had gone upstairs and moved all
his stuff out, that no one else had been up there, and then described how they
had discovered the fire.  Burch related
that he had observed two separate areas of fire damage, which, he concluded,
meant that each fire had been started independently of the other.  He indicated that there was both a lighter
and a book of matches in the room when he first went into it the night of the
fire.

Burch testified that, because he did not have
certification as an arson investigator at the time of the fire, he contacted
the state fire marshal=s
office to assist in the investigation. 
He acknowledged that he never considered Angel as a suspect in the case
because he had no reason to suspect him. 
He acknowledged that the only evidence he had to connect Joaquin to the
fire were the statements of Angel, Brenda, and Kolb.








Clint Williams testified that he was a deputy
state fire marshal who conducts investigations to determine whether fires are
accidentally or intentionally set.  He
said that he arrived at the scene of the fire in question on the morning after
the fire.  He indicated that, based upon
his investigation, there were three separate fires.  He concluded that, in the area of one of the
fires, it appeared that something was 
poured on the floor area.  He said
that tests were inconclusive with respect to the presence of an
accelerant.  He said, however, that,
based upon his experience and training, the fires were intentionally
started.  He acknowledged that he found
no physical evidence indicating who started the fire.  He said that he did not attempt to take
fingerprints from items in the room because it would have been meaningless to
take fingerprints from Joaquin=s
room.

Erminia Banda testified that she was Angel and
Joaquin=s
sister.  She said that, on the evening in
question, she got a call to assist Joaquin. 
She indicated that she found him on foot carrying his jacket.  She stated that she took him back to Angel=s house.  She said that Joaquin went in to get his
stuff.  She indicated that, as far as she
knew, he did not have anything with him that he could use to start a fire.  She related that they made three or four
trips to his mother=s with
his belongings.  She stated that, in her
opinion, Joaquin is a peaceful person and not a law breaker.  She said that her brother Angel is a liar.  She acknowledged that Joaquin told her he had
been upstairs.  She said that, when he
left the house, Joaquin did not appear unduly excited.  Maria Esquerdo, the mother of Joaquin and
Angel, testified that Angel is not very truthful.

Joaquin testified that, on the day of the fire, he
was visiting his mother when Angel called and asked him what he was doing
there.  He said that he did not recall
Angel saying anything about a gun.  He
stated that Angel came over and demanded his key but did not mention anything
about a gun.  He indicated that he went
to get his stuff after Angel called his mother=s
house and said that, if he did not come get it, it would be thrown out into the
street.  He denied setting the fire,
saying that he did not know who did.  He
acknowledged having a shotgun in the house that Angel did not know about.  He said that he was Apretty
positive@ he had
told Brenda about it.  He stated that he
had not seen any signs of the fire when he left.  He acknowledged that he left without telling
anyone.








We hold that the evidence is factually sufficient
to support Joaquin=s
conviction because it is not so weak that the verdict is clearly wrong and
manifestly unjust nor is there any contrary evidence so strong that the
standard of proof beyond a reasonable doubt could not have been met.  Joaquin=s
suggestion that there are just as many circumstances establishing Angel=s guilt as circumstances establishing
his guilt does not withstand scrutiny inasmuch as there is evidence showing
that only Joaquin and not anyone else, including Angel, had been upstairs prior
to the start of the fire.  We overrule
issue six.  

Joaquin suggests in issues one through four that
the trial court abused its discretion by not allowing him to introduce evidence
showing that Angel had insurance on his house and that he collected on a claim
that he made after the fire.  We agree
with the State that such evidence, even if relevant, may be excluded if its
probative value is substantially outweighed by the danger of unfair prejudice,
confusion of the issues, or misleading the jury.  TEX.R.EVID. 403.  Inasmuch as most homeowners would have their
house insured for fire and present a claim in the event of a fire, mere
evidence that Angel had his house insured for fire and collected on a claim
after the fire is of little probative value to establish that Angel, not
Joaquin, started the fire.  Such
evidence, however, carries the danger of unfair prejudice, confusion of the
issues, or misleading the jury.  We hold,
therefore, that the trial court could reasonably have determined that the
probative value of this evidence was substantially outweighed by such a
danger.  

Joaquin urges that the exclusion of the evidence
prevented him from exposing a motive, bias, or interest for the witness to
testify, relying on the case of Carroll v. State, 916 S.W.2d 494 (Tex.Cr.App.1996).  In Carroll, the court held that the
constitutional right of confrontation is violated when appropriate
cross-examination is limited.  Id. at
497.  It held that, within the broad
scope of appropriate cross-examination, is questioning concerning criminal
charges pending against a witness and over those which those in need of the
witness=s
testimony might be empowered to exercise control.  Id. at 498.  The court subsequently cited authority from
the United States Supreme Court to the effect that the trial court might
exercise discretion to prevent prejudice or confusion of the issues.  Id. 
We do not find the opinion in Carroll to be inconsistent with
this opinion.  

Joaquin also argues that the exclusion of this
evidence denied him due process by preventing him from presenting a
defense.  He refers us to the case of Wiley
v. State, 74 S.W.3d 399 (Tex.Cr. App.2002), suggesting that this case is
distinguishable.  








In Wiley, the appellant was convicted of
arson in connection with the burning of his own business.  As in this case, the appellant tried to
introduce evidence suggesting that someone else might have started the fire,
but the evidence presented amounted to no more than unsupported speculation.  Id. at 408.  The court upheld the trial court=s exclusion of such evidence based upon
Rule 403, absent proof that the alternative perpetrator committed some act
directly connecting him or her to the charged offense.  Id. at 406.  Subsequently, after noting that such evidence
could not withstand the Rule 403 balancing test because its probative value was
slight and it presented a great threat of confusion of the issues, the court
stated that it also presented a threat of Aunfair
prejudice@ by
inviting the jury to blame an absent, unrepresented, incompetent person for an
arson when there was not a scintilla of evidence that he was actually
involved.  Id. at 407.  

Based upon this language, Joaquin suggests that Wiley
is distinguishable because Angel and Brenda were present before the court as
the primary complaining witnesses. 
Having considered the entire opinion in Wiley, we see nothing
that would lead us to the conclusion that the trial court=s ruling would have been different if
the alternative perpetrator had been a complaining witness.  We believe that Wiley strongly
supports our opinion.  We overrule issues
one, two, three, and four.    

Joaquin suggests in issue five that the trial
court erred by omitting evidence of an unsolved arson case occurring within
three months of the fire for which he was being tried and within four blocks of
that location.  He does not suggest that
there was any evidence showing that any individual who might have started the
nearby fire had any connection with the fire for which he was being tried.  This is merely an effort to establish an alternative
perpetrator defense with an anonymous alternative perpetrator.  For the same reasons that we upheld the trial
court=s
exclusion of such evidence with respect to insurance, we uphold the trial court=s exclusion of this evidence.  We overrule issue five.  

The judgment of the trial court is affirmed.

 

PER CURIAM

March
10, 2005

Do not
publish.  See TEX.R.APP.P.
47.2(b).

Panel consists of:  Arnot, C.J., and

McCall, J., and Hill, J.[1]











[1]John G. Hill, Former Chief Justice, Court of Appeals,
2nd District of Texas at Fort Worth sitting by assignment.