

In The

Court of Appeals

Seventh District of Texas at Amarillo

_____

No. 07-12-00360-CR

_____

PAUL THOMAS GERIK, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 181st District Court
Randall County, Texas
Trial Court No. 22,925-B; Honorable John Board, Presiding

February 10, 2014

MEMORANDUM OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Following a plea of not guilty, Appellant, Paul Thomas Gerik, was convicted by a jury of burglary of a habitation,[1] enhanced,[2] and sentenced to ninety-nine years confinement. By three issues, he maintains the trial court denied his right to a fair trial

---

[1] TEX. PENAL CODE ANN. § 30.02 (West 2011).

[2] TEX. PENAL CODE ANN. § 12.42(d) (West Supp. 2013). Appellant plead "true" to two enhancements, making the offense punishable by confinement for life, or for any term of not more than 99 years or less than 25 years.

by (1) limiting his cross-examination of a witness, (2) commenting on the weight of the evidence and (3) excluding evidence relevant to his defense. We affirm.

## BACKGROUND

The complainant arrived at her home on the afternoon of October 3, 2011, to find it had been burglarized.[3] She called the police. She went through her home and made a list of items that were missing. Among the items missing were a red "Flying V" guitar, a silver "Star of David" necklace, and a personal/business checkbook. Some, but not all, of the items stolen were eventually recovered from a pawn shop and returned to her.

At trial, the pawn shop clerk testified Appellant pawned a red "Flying V" guitar and a silver "Star of David" necklace within hours of the burglary. Additionally, an employee from a check-cashing establishment testified that on October 7, 2011, four days after the burglary, Appellant presented a check made out to him from a business account of the complainant's husband. The memo on the check provided it was for "home construction materials," but testimony established no remodeling had been done at the complainant's home. The employee processed the check through a verification system which revealed the check had been reported stolen. He made a phone call to confirm the information and then attempted to delay Appellant until police could arrive. Appellant asked that the check be returned so he could cash it elsewhere; however, the employee explained he could not return the check because it had been reported stolen, and Appellant left.

---

[3] Residents of the home include the complainant's husband and son.

2

The complainant testified she initially had suspicions her son, Isaac, was involved in the burglary. At the time of the burglary, he lived at home, did not have a vehicle, worked sporadically at a bakery, was a member of a metal band and occasionally "crashed" at a friend's apartment. He also had recently purchased a studio and filled it with equipment for his band to rehearse and record. No evidence ever linked Appellant to Isaac. There was further speculation that one of Isaac's friends, whom the complainant described as an "enemy," could have had motive to commit the burglary, but no evidence was ever found to connect him to the burglary either.[4]

Testimony established another individual pawned two guitars from the burglary on October 28, 2011, eight days after Appellant was taken into custody. While this individual did become a suspect in the burglary because of the circumstances surrounding the pawning of the guitars and his prior criminal record, he was never located. According to the lead detective, while he did attempt to contact all suspects, his investigation of other suspects never cleared Appellant.

The grand jury ultimately indicted Appellant for intentionally and knowingly entering a habitation without the effective consent of the owner and attempting to commit and committing theft. After a jury trial on guilt/innocence as well as punishment, Appellant was convicted and sentenced to ninety-nine years confinement. He timely filed notice of appeal. Appellant does not challenge the sufficiency of the evidence to support his conviction. Therefore, only the facts necessary for disposition of his issues will be discussed.

---

[4] Isaac referred to this friend as his "roommate" even though he resided with his parents. The two had a falling out over his mother's interference with their relationship, and Isaac moved his belongings out of his friend's apartment because his friend threatened his mother.

## DISCUSSION

We will address Appellant's issues simultaneously as presented in his brief. By issues one and three, he complains of the trial court's limitation of cross-examination and consequential exclusion of evidence and by issue two, asserts the trial court improperly commented on the weight of the evidence. The trial court's alleged errors, he argues, resulted in fundamental error because it deprived him of the right to a fair trial. We disagree.

Issues One and Three

From the record it is apparent that the defense's strategy was to cast suspicion for the burglary on other individuals—Isaac, his friend-turned-enemy or the individual who had pawned two guitars after Appellant's apprehension. While Isaac was testifying, defense counsel questioned him repeatedly about his financial situation, raising the possible argument that Isaac had committed the burglary to supplement his modest income to meet his expensive spending habits. When the examination turned to his possible involvement in the burglary, Appellant's counsel stated,

> Your Honor. At this point I might be going into a lot of questioning where you may or may not want to invoke his 5[th] Amendment right or something along that line. Should I do this outside the presence of the jury?

At that point the jury was excused and Appellant's counsel continued to examine Isaac. Counsel eventually reached a point where he expressed his intent to continue questioning Isaac in the presence of the jury "unless there's some sort of objection." Next, the State objected on grounds of relevance. The State also objected contending that, if the defense was attempting to attack the witness's credibility, then the probative

4

value of the evidence was "substantially outweighed by any prejudicial effect."  The trial court sustained the objections and defense counsel was instructed not to go into those matters in the jury's presence.  The jury was reseated, and Appellant's counsel continued examining Isaac concerning his financial situation and possible involvement in the burglary.

Appellant contends the trial court's actions deprived him of his constitutional right of cross-examination.  The Sixth Amendment right of confrontation includes the right to cross-examine a witness and the opportunity to show that a witness is biased or the witness's testimony is exaggerated or unbelievable.  *Irby v. State*, 327 S.W.3d 138, 145 (Tex. Crim. App. 2010).  That right, however, does not include "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985). Additionally, a trial court may permissibly limit the scope of cross-examination to prevent harassment, prejudice, confusion of the issues, harm to the witness and repetitive or marginally relevant interrogation.  *Carroll v. State*, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996).

A complaint that a trial court denied a defendant the constitutionally protected right of cross-examination requires a Confrontation Clause objection to preclude procedural default on appeal.  *See Reyna v. State*, 168 S.W.3d 173, 176-77 (Tex. Crim. App. 2005).  In the context of preservation of error, "party responsibility," i.e., the party complaining on appeal, requires the party to have done everything necessary to bring to the trial court's attention the complained-of ruling and the reason for the complaint.  *See id.* (citing 1 Stephen Goode, et al., TEXAS PRACTICE SERIES: GUIDE TO THE TEXAS RULES

OF EVIDENCE: CIVIL AND CRIMINAL § 103.2 (2d ed. 1993)). *See also* TEX. R. APP. P. 33.1(a).

Appellant further contends the trial court's rulings caused the exclusion of relevant evidence. To preserve error regarding a trial court's ruling excluding evidence which affects a substantial right, the complaining party must make an offer of proof which sets forth the substance of the proffered evidence unless it is apparent from the context of the questions asked. *See* TEX. R. EVID. 103(a)(2). *See also Reyna*, 168 S.W.3d at 176. "Preservation of error is a systemic requirement that a first-level appellate court should ordinarily review on its own motion." *Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009) (citing *Jones v. State*, 942 S.W.2d 1, 2 n.1 (Tex. Crim. App. 1997)).

At no time did Appellant's counsel lodge any complaint concerning the denial of the right of confrontation or the exclusion of evidence. He offers no reference to any question he was deprived of asking, nor does he make offers of proof setting forth the substance of any excluded testimony for this Court to review for harm. Even if we were to assume the trial court erred in somehow limiting Appellant's right to confrontation of witnesses or improperly excluding evidence, the complained of rulings do not rise to the level of fundamental error dispensing with the need for an objection or an offer of proof. Consequently, no error was preserved, and Appellant's first and third issues are overruled.

Issue Two

At a later point in the proceeding, the complainant was recalled and defense counsel began questioning her about her son's "think[ing] that he moved out around three months prior to the burglary." Next, the State objected to that question as a "mischaracterization of the evidence." While sustaining the objection the trial court commented, "the jury will decide what the evidence is, not me, but I think that's an improper question." Appellant contends the trial court's comments constitute an improper and erroneous comment on the weight of the evidence.

> Article 38.05 of the Texas Code of Criminal Procedure provides:
>
> In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case.

*See* TEX. CODE CRIM. PROC. ANN. art. 38.05 (West 1979). To preserve a complaint on a trial judge's improper comments, an objection and an adverse ruling is a condition precedent for appellate review. *See Oulare v. State*, 76 S.W.3d 231, 233 (Tex. App.— Amarillo 2002, no pet.). Following the trial court's comments, defense counsel moved on to another line of questioning without lodging an objection to those comments.

Due process requires a neutral and detached hearing body or officer. *See Gagnon v. Scarpelli*, 411 U.S. 778, 786, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). *See also Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006). Absent a clear showing of bias, a trial court's actions will be presumed to have been correct. Notwithstanding Appellant's procedural default, the trial court's comments set forth

7

above do not reflect bias or partiality. From the record it is clear the trial court had been patient with defense counsel's line of questioning and was moving the trial along. In fact, the comment emphasizes that the jury, not the judge, is the determiner of the truth of the statement and the credibility of the witnesses. Simply stating that a question is "improper" is not a comment on the truth of any factual statement incorporated into the question. Here, the comments did not rise to the level of fundamental error dispensing with the need for an objection. Issue two is overruled.

## CONCLUSION

Accordingly, the trial court's judgment is affirmed.

Patrick A. Pirtle
Justice

Do not publish.