Opinion issued November 10, 2011.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00978-CR

———————————

Rodolfo Oliva, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 185th District Court

Harris County, Texas



Trial Court Case No. 1200359

 



 

MEMORANDUM OPINION

Appellant
Rodolfo Oliva was convicted of arson and sentenced to
eight years’ confinement.  In three points
of error, appellant complains the trial court made incorrect evidentiary rulings
and requests that we reverse and remand for a new trial.  We affirm the trial court’s judgment.  

BACKGROUND

Appellant was convicted of arson for
setting fire to a car owned by Amy Gallegos, a friend and co-worker of
appellant’s ex-girlfriend, Candice Gonzales. 
Four eyewitnesses and one police officer testified at trial about the
events leading up to the arson and the arson itself.  Another officer testified about the evidence
at the scene and his investigation of the incident.  

A.   The Early Morning Encounter 

Gallegos testified that when she
left work with Gonzales around 2:30 a.m. on January 22, 2009, a truck followed
them most of the way home.  She managed
to lose the truck by speeding up and taking some back roads to her
apartment.  Gallegos could not identify
who was driving the truck, but Gonzales testified that she recognized the
driver as appellant.  Gallegos called the
police when the truck tried to run her off the road, and again periodically to
let the police know her location as she made her way to her apartment.

When Gallegos and Gonzales reached
Gallegos’s apartment, two other friends—Juan Reyes and Bianca Lopez—were already at the apartment.  Shortly after Gallegos and Gonzales arrived, appellant and another
person named Daniel pulled up outside. 
Through the window, Gallegos saw the appellant in the parked truck, and
Gonzales testified to seeing Daniel get out of the truck with what looked like
a gun and attempt to break into both the door and a window of the apartment.  Reyes testified that when he looked out the
window, he saw appellant try to kick the door in.  Gallegos called the police again, and the
occupants of the apartment hid in the kitchen until Officer Hensley
arrived.  Appellant and
Daniel left shortly before the officer got there. 

Officer Hensley testified that when
he got to the apartment, Gallegos and Gonzales “were scared,” “excited,”
exhibiting “anxiety, crying” and that “it was almost
like they were paranoid, like somebody was watching them.”  Over appellant’s hearsay objection, the trial
court allowed Hensley to testify about what Gallegos and Gonzales said under
the “excited utterance” exception to the hearsay rule.  Gonzales told Hensley that appellant was an
ex-boyfriend with whom “she’s had multiple disturbances” and that he followed
Gallegos and her home from work.   
Hensley also testified that Gallegos and Gonzales told him that they
locked themselves in the apartment when they got home, and that they saw
appellant and Daniel banging on the door of the apartment and walking around
outside trying to gain access through the door or a window.  Daniel had a gun in his hand and Gallegos and
Gonzales expressed to Hensley their fear that appellant and Daniel “would break
inside [the apartment] and shoot them both.” 
Hensley stayed at the apartment for 30–45 minutes because Gallegos and Gonzales were so scared.  Henlsey examined
the window that the witnesses said appellant and Daniel were trying to break
into, and there were cuts in the window screen. 
Finally, Hensley testified that, as part of the witnesses’ description
of appellant, they described a tattoo on his stomach that says “Tango Blast,”
which is “a street gang in the city of Houston.”  

B.   The Fire

Reyes testified he was talking to a
friend at Gallegos’s apartment around 7:00 or 8:00 a.m. later that same morning
when he looked out the door and saw appellant throw a brick through a window of
Gallegos’s car and then set fire to a rag sticking out of a water bottle with
fluid in it and throw it into the car. 
Reyes ran outside and saw appellant and someone else who Reyes could not
identify running away.  After
unsuccessfully trying to put out the fire in the car with a blanket, Reyes called
out to wake up Gallegos and Gonzales and retrieved some water from the
apartment to extinguish the fire.  Gonzales
ran outside in time to see two men running from the scene.  She testified to believing one of the men was
appellant, based on the clothing he was wearing.  

Dwayne Johnson, a neighbor,
testified to seeing two Hispanic males pull up in a car, walk over to
Gallegos’s car, throw something inside the car that ignited it, and take off
running.  He then saw two different males
run out of Gallegos’s apartment, fire a gun at the two people running away, and
then turn their efforts to putting out the car fire.  Johnson was able to see the occupants of the fleeing
car and gave an in-court identification of appellant as one of the people he
saw start the fire and then drive away.   


Finally, Officer Gregory Gordon, an
arson investigator, testified about the physical evidence at the scene, about
interviewing the various witnesses, and about Reyes and Gallegos positively
identifying appellant in a photo lineup. 

C.   The Excluded Impeachment and Bias Evidence       

While cross-examining Reyes,
appellant’s counsel asked whether he was in a gang or had ever made gang signs.  When Reyes denied any gang membership or
activity, appellant’s counsel attempted to introduce four pictures of Reyes that
purportedly depicted Reyes making gang signs. 
The State objected, arguing relevance and prejudice, and disputing the
characterization of the pictures. 
Following a bench conference, the trial court sustained the State’s
relevance objection and excluded the pictures. 


The State elicited testimony from
Reyes that he had previously received deferred adjudication on a possession of
marijuana charge, and that his probation on that charge was currently being
revoked in a pending proceeding.  After
the State objected to follow-up questions on cross-examination, the trial court
held a bench conference where appellant’s counsel inquired if he could ask
whether Reyes had “gotten any concession for testifying”?  Because the State had already represented
that here had not “been any deals” with Reyes, the trial court responded “No,
because counsel has just told you that there isn’t.”     

THIS APPEAL

On appeal, appellant argues that
the trial court erred by: (1) allowing Officer Hensley to testify as to hearsay
statements he gathered from Gallegos and Gonzales, (2) refusing to allow
appellant’s counsel to introduce pictures of Reyes purportedly making gang
signs that were relevant to his credibility and would demonstrate bias, and (3)
refusing to allow appellant’s counsel to question Reyes about whether he received,
or believed that he would receive, any consideration from the State in his
pending criminal case in exchange for his testimony in this case.  

A.   Hearsay Evidence

1.     Applicable Law   

We review a trial court’s ruling on
the admission of evidence under an abuse of discretion standard.  Sexton v. State, 93 S.W.3d 96, 99 (Tex. Crim. App. 2002).  A trial court abuses its discretion when it
acts arbitrarily and unreasonably without reference to any guiding rules or
principles.  Montgomery v. State, 810 S.W.2d 372, 380
(Tex. Crim. App. 1990).   We will
uphold a trial court’s decision that is within “the zone of reasonable
disagreement.”  Salazar v. State, 38 S.W.3d 141, 154
(Tex. Crim. App. 2001); Montgomery,
810 S.W.2d at 390–91 (op. on reh’g.).

“‘Hearsay’ is a statement, other
than one made by the declarant while testifying at
the trial or hearing, offered in evidence to prove the truth of the matter
asserted.”  Tex. R. Evid. 801(d)
(Vernon Supp. 2010).  Hearsay is generally
not admissible.  See Tex. R. Evid. 802 (Vernon Supp. 2010).
 An “excited utterance” is one of several
exceptions to this rule, allowing for admission of a “statement relating to a
startling event or condition made while the declarant
was under the stress of excitement caused by the event or condition.”  Tex. R.
Evid. 803(2) (Vernon 2003).
 The rationale for recognizing this
exception is “a psychological one, namely, the fact that when [a person] is in
the instant grip of violent emotion, excitement or pain, he ordinarily loses the
capacity for reflection necessary to
the fabrication of a falsehood and the ‘truth will come out.’”  Zuliani v. State,
97 S.W.3d 589, 595 (Tex. Crim. App. 2003) (quoting Evans v. State, 480 S.W.2d 387, 389 (Tex. Crim. App. 1972)).

In deciding whether the excited
utterance exception applies, the trial court should determine “whether the declarant was still dominated by the emotions, excitement,
fear, or pain of the event or condition” when the statement was made.  Apolinar v. State, 155 S.W.3d 184, 186–87 (Tex. Crim. App. 2005).  Factors that the court may consider include
the length of time between the occurrence and the statement, the nature of the declarant, whether the statement is made in response to a
question, and whether the statement is self-serving.  Id. at 187.  The
critical question is “whether the declarant was still
dominated by the emotions, excitement, fear, or pain of the event” or condition
at the time of the statement.  Salazar, 38 S.W.3d at 154 (quoting McFarland v. State, 845 S.W.2d 824, 846
(Tex. Crim. App. 1992)); see also Zuliani, 97 S.W.3d at 596 (reviewing court must
determine whether the statement was made “under such circumstances as would
reasonably show that it resulted from impulse rather than reason and
reflection”).

Even if the trial court errs in
admitting hearsay evidence under the excited utterance exception, such error is
subject to harm analysis. Any error in the admission of evidence is harmless if
substantially the same evidence is admitted elsewhere without objection. See Prieto
v. State, 337 S.W.3d 918, 922 (Tex. App.—Amarillo 2011, pet. ref’d).

2.    
Discussion

Appellant complains that Officer
Hensley, the State’s first witness, was permitted to testify about things he
was told by Gallegos and Gonzales when he was dispatched to Gallegos’s
apartment early the morning of February 22, 2009.    Appellant does not specifically address the
excited utterance exception relied upon by the State at trial, but instead argues
generally that the State “never offered nor proved up the testimony coming in
as any exception to the hearsay rule.” 
Appellant contends that this testimony by Hensley was inadmissible,
lacked probative value, and that the trial court’s error in refusing to exclude
it “resulted in harm to the Appellant and in fact denied him a fair trial and
due process under the Sixth and Fourteenth Amendments of the United States
Constitution.”  

In response, the State argues that
the trial court was correct in concluding that the excited utterance exception
to the hearsay rule applies, given that Hensley arrived at the apartment just
moments after appellant and Daniel left, and that he testified that Gallegos
and Gonzales were still visibly agitated and scared.  The trial court’s conclusion that Gallegos
and Gonzales were in an excited state when they spoke to Officer Hensley was thus
not, the State contends, “so clearly wrong as to lie outside that zone within
which reasonable persons might disagree.” 
Zuliani,
97 S.W.3d at 595. 


Although in one sentence of his
brief here appellant couches his argument in terms of the Sixth and Fourteenth Amendments,
we note that his objection at trial was only to hearsay.  Because these additional objections that were
not made at trial are waived, we address only whether the trial court erred by
determining that Hensley’s hearsay testimony fit within the excited utterance
exception to the hearsay rule.  See Dixon v. State, No. 01-09-00340-CR,
__ S.W.3d __, __, 2011 WL 839689, at *8 (Tex. App.—Houston [1st Dist.] March 10, 2011, pet. stricken) (“Appellant suggests on
appeal that the admission of the 911 call violated the Confrontation Clause of
the United States Constitution, but that argument is waived because he failed
to object on that basis at trial,” where his “sole objection . . . .was
hearsay.”).

We have held that even a one hour lapse
between a traumatic event and a declaration does not make an excited utterance
inadmissible when an officer testifies at trial that the declarant
was “very visibly shaken, very upset, scared, excited, and crying” in
describing the event.  Id. 
In cases where there is evidence that a statement was made “shortly
after” a startling event, and the person making the statement was visibly upset,
crying, and “really . . . nervous and scared,” it is within the trial court’s
discretion to admit such statements under the excited utterance rule.   Wells
v. State, 319 S.W.3d 82, 90 (Tex. App.—San Antonio 2010, pet. ref’d); see also Hudson
v. State, 179 S.W.3d 731, 737 (Tex. App.—Houston [14th Dist.] 2005, no
pet.) (excited utterance exception applied because complainant was “visibly
shaken and highly upset when [officers] arrived within five minutes of
receiving assault call”); Bufkin v. State,
179 S.W.3d 166, 172 (Tex. App.—Houston [14th Dist.] 2005) (excited utterance
exception applied because complainant was “extremely agitated when officers
arrived at the scene . . . [and] so upset that officers initially could not
understand her”), aff’d,
207 S.W.3d 779 (Tex. Crim. App. 2006).

The trial court did not abuse its
discretion by admitting Hensley’s testimony about what Gallegos and Gonzales
told him immediately after he arrived at the apartment under the excited
utterance exception to the hearsay rule. 
Appellant and Daniel had chased them home and had just been trying to
break into the apartment while Gallegos was on the phone with the police trying
to get an officer to the scene.  Hensley
arrived “[r]ight after” the appellant and Daniel
left.  Hensley testified that when he
arrived Gallegos and Gonzales “were very scared,” “excited, anxi[ous], crying.  They
definitely had tears.  They were just –
it was almost like they were paranoid, like somebody was watching them.”  Hensley testified to staying at the apartment
for 30–45 minutes because Gallegos
and Gonzales were so scared and they needed time to calm down.  We overrule appellant’s first point of error.

A.   Exclusion of Evidence

1.    
Standard of Review

Only relevant evidence is
admissible.  Tex. R. Evid. 402
(Vernon 2003).  Evidence is
relevant if it has “any tendency to make the existence of any fact that is of
consequence to the determination of the action more probable or less probable
than it would be without the evidence.” Tex.
R. Evid. 401 (Vernon 2003).
 We review a trial court’s decision on
exclusion of evidence under an abuse of discretion standard.  Burden
v. State, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001); Wolfberg v. State, 73 S.W.3d 441, 443 (Tex. App.—Houston [1st Dist.] 2002,
pet. ref’d).

The constitutional right of
confrontation is violated when appropriate cross-examination is limited. Carroll v. State, 916
S.W.2d 494, 497 (Tex. Crim. App. 1996). 
The rules of evidence forbid the use of specific instances of conduct to
impeach a witness’s credibility, except for criminal convictions as provided by
Rule 609.  See Tex. R. Evid. 808(b) (Vernon 2003).  Specific instances of misconduct are,
however, admissible to demonstrate that a witness is biased or has an interest
in the outcome of the case. Tex. R. Evid. 613(b) (Vernon 2003); Dixon v. State, 2 S.W.3d 263, 271 (Tex. Crim.
App. 1998).  While great latitude
should be allowed in cross-examining witnesses to reveal possible bias,
prejudice, or self-interested motives to falsify testimony, appellant bears the
burden of demonstrating the relevance of the proffered evidence to the issue of
bias or prejudice.  Chambers v. State, 866 S.W.2d 9, 26–27 (Tex. Crim.
App. 1993).

2.    
Discussion    

Reyes was an eyewitness who
testified for the State.  In his second
and third points of error, appellant complains that the trial court erred by (1)
excluding from evidence photographs of Reyes purportedly making gang signs, and
(2) limiting appellant’s cross-examination of Reyes about whether he had made a
deal with the State to testify in this case in exchange for any concessions in
another pending criminal proceeding, as well as any bias he might have in
testifying for the State.  

a.     The Excluded Photographs     

During appellant counsel’s
cross-examination of Reyes, Reyes denied having been in a gang or ever making
gang signs.  Appellant’s counsel showed
Reyes four pictures printed from Reyes’s myspace.com page, which Reyes
confirmed were fair and accurate pictures of him.  Appellant’s counsel claimed that the pictures
depicted Reyes making gang signs and thus sought to introduce the pictures to
impeach Reyes.  The trial court held a
bench conference and then excluded the pictures on relevance grounds:

STATE:      Your Honor, I don’t think those are gang
signs.  He’s throw’s
[sic] the same sign in all four pictures. 
Looks more like, Gig ’em, Aggies.

COURT:     Okay. 
Well, do you have any objection?

STATE:      It would be irrelevant and prejudicial.
Unless he can present some evidence that —

COURT:     I don’t know how these are relevant.

. . . .

DEFENSE COUNSEL: Judge, he just denied — it goes
to credibility.

STATE:      If they’re not gang signs, they’re not
relevant. I don’t think they’re gang signs.

DEFENSE COUNSEL:           That’s
for the jury to decide.

STATE:      They were just putting pictures of people
up partying.

COURT:     I’m not sure any of this is relevant to
this. Can you help me with that?

DEFENSE COUNSEL: It goes to his credibility. He brought out my
guy has some kind of gang tattoo and now — . . . it’s relevant material that
goes to his credibility as a witness.  He’s
denied he’s in a gang. He denied he ever gave gang signs.

STATE:      Those pictures don’t give any indication he
was in a gang that gave gang signs.

DEFENSE COUNSEL: That could be gang signs.  We can have somebody else testify about it.

COURT:     I’m going to sustain the objection, the
relevancy objection.

In his brief, appellant opines that
the excluded pictures showed “Reyes giving gang signs.”  He then argues that “the fact[] that the
witness Juan Reyes denied that he was ever in a gang and never gave gang signs
clearly made these photographs admissible into evidence after the witness
submitted that he was the one in the pictures and they fairly and accurately
showed him in the photographs.”  

In addition, appellant contends
that Reyes had a “bias and prejudice against the Appellant for two
reasons.”  First, Reyes testified that he
was dating Gonzales at the time of trial and admitted to knowing that she had
previously dated appellant.  Second,
Hensley testified that appellant had a tattoo of “Tango Blast” on his stomach,
which is the name of a street gang. 
According to appellant, the exhibits he attempted to introduce “showed
the witness Juan Reyes with a number of people all who appeared to be gang
members and who were giving gang signs, as well as Mr. Reyes himself was giving
gang signs shows that Mr. Reyes was the member of the gang, a gang that very
well may have been a competitor or enemy of the so called Tango Blast gang.”  Thus, appellant contends, the pictures should
have been admitted “to explain the bias that the witness Juan Reyes would have
had against the Appellant because of his gang membership.”  Excluding the pictures, appellant asserts, thus
deprived him of his constitutional right of confrontation.    

The State objected at trial to
admission of the pictures on relevance and prejudice grounds, arguing that the
pictures did not appear to depict gang signs but, rather, a group of people
“partying.”  Appellant’s counsel
disagreed, noting they “could be gang signs” and opining “[t]hat’s for the jury
to decide.”  The trial court sustained
the State’s relevance objection. 
Appellant’s counsel represented to the court that he could have someone
else testify about whether Reyes’s hand gestures in the pictures were gang
signs, but no such offer appears in the record.    

“Questions of relevance should be
left largely to the trial court, relying on its own observations and
experience, and will not be reversed absent an abuse of discretion.”  Goff v State, 931 S.W.2d 537, 553 (Tex. Crim. App. 1996).  If a trial court’s evidentiary ruling “was
correct on any theory of law applicable to the case, in light of what was
before the trial court at the time the ruling was made, then we must uphold the
judgment.” Martin v.
State, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005).  

Without reaching the State’s
argument that Reyes’s purported gang affiliation was a collateral matter that
was not a proper subject of impeachment on these facts, we conclude that the
trial court’s exclusion of the photographs was within its discretion because
appellant’s counsel did not establish that the photographs depicted gang
activity.  Appellant’s counsel himself
stated only that it “could” show gang signs and, although he offered to produce
testimony on this subject, he ultimately did not do so.  On this record, we cannot conclude that the
trial court abused its discretion.  We
overrule appellant’s second point of error.

b.    Questions about Reyes’s Pending
Felony Case      

During the direct examination of
Reyes, the State asked about any felony convictions:

Q.      Mr. Reyes, have you ever been convicted of a felony in this
state or any other state?

A.      Not yet.  I’m — right
now I’m going to trial.

Q.      Okay.  Have you ever — did you
have the deferred adjudication for possession of marijuana?

A.      Uh-huh.

Q.      And did your deferred get revoked?

A.      Yes.

Q.      Other than that, do you have any other felony convictions in
this state?

A.      No. 

During cross-examination, the State objected when
appellant’s counsel asked Reyes whether he had “a felony case pending.”  The trial court sustained the objection after
hearing argument at a bench conference:

DEFENSE COUNSEL: Judge, he went into it and asked him about his
record and everything. And, so —

COURT:     He asked him if he had a conviction,
counsel.

DEFENSE COUNSEL: Right. But I think it’s admissible because it
still goes to his credibility here. It’s a drug case and drugs — 

COURT:     Does it have anything to do with this case?

STATE:      No.

DEFENSE COUNSEL: It has to do with drugs and I think drugs will
come out in this case.

COURT:     No, I mean, has there been any deals or —

STATE:      No, absolutely not.

DEFENSE COUNSEL: Did he waive his Fifth Amendment right to
testify?

COURT:     He doesn’t have to. It’s not about that.

DEFENSE COUNSEL: I know, but he’s testifying — okay.

COURT:     There’s — okay. So, how is that
relevant?

DEFENSE COUNSEL: I think it’s related to his credibility, Your
Honor.

COURT:     And my question is: How could that be?

DEFENSE COUNSEL: Because of the fact he’s under indictment,
charges are pending. It shows this is the second —

COURT:     Were they pending at the time?

STATE:      I can find out if they were pending at the
time. They would have been a year ago. I’d have to double-check to make sure.

COURT:     I’ll sustain the State’s objection at this
point until you can show me some case law that will be admissible.

DEFENSE COUNSEL: Can I ask him . . . [i]f
he’s gotten any concession for testifying[?]

COURT:     No, because counsel has just told you that
there isn’t. That’s not relevant.

DEFENSE COUNSEL: Okay. But if they have made him any agreements
or anything —

COURT:     He just told you that they have not.

DEFENSE COUNSEL: Okay. All right. I
just wanted to get it in the record.

STATE:      We didn’t.

DEFENSE COUNSEL: Okay. All right.

Appellant argues that the court
erred by refusing to allow him to “inquire of the witness himself whether or
not any concessions or deals had been made to him.”  While acknowledging that the State
represented no deals had been made, he complains that the prosecutor was “not
under oath and was not testifying at the time.” 
He also notes that Reyes’s “state of mind” might have led him to believe
that some concession would be made in his other case, even if there was no
express agreement.  According to
appellant, the trial court’s refusal to allow him to pursue this line of
questioning violated his constitutional right to confrontation and opportunity
to show bias.  See Davis v. Alaska, 415 U.S. 308, 317–18 (1974) (holding it was error to limit
cross-examination about whether witness was under undue pressure to lie because
of his “vulnerable status as a probationer” or because he “might be a suspect
in investigation”); Carroll v. State,
916 S.W.2d 494, 500 (Tex. Crim. App. 1996) (holding that, even in the absence
of express agreement with the State, cross-examination of witness with pending
criminal charges about any motivation witness might have to testify favorably on
the State’s behalf should be allowed).     

In response, the State notes first
that appellant’s request at trial was only that he be allowed to inquire
whether Reyes had “gotten any concession for testifying,” which does not
comport with his argument on appeal that he was prevented from asking if Reyes
“believed he would receive leniency even without an express promise of
it.”  Accordingly, the State argues,
appellant’s complaint was waived.  In
addition, the State contends that the argument fails on the merits, as
appellant never established the necessary connection between Reyes’s criminal
charges and his testimony in this case as is required to make such
cross-examination permissible.

We agree with the State that appellant’s
counsel’s request that the trial court permit him to ask whether Reyes had “gotten
any concession for testifying” or if the State has “made him any agreements or
anything,” followed up by counsel’s statement, “All right. I just wanted to get
it in the record,” did not put the trial court on notice of the complaint
appellant now makes on appeal that he wanted to explore Reyes’s subjective
belief that testifying a certain way might curry favor with the State.  Shelling
v. State, 52 S.W.3d 213, 223–24 (Tex. App.—Houston [1st Dist.] 2001, pet. ref’d)
(en banc) (holding issue not preserved for appeal when trial objection does not
comport to argument on appeal and specific grounds were not apparent from
context).  In any event, without a bill
of review demonstrating what the witness would have testified to, the trial
court did not err in prohibiting this line of questioning because appellant did
not demonstrate a “logical relationship between the pending charges and the
witness’ ‘vulnerable relationship’ or potential bias or prejudice for the
State, or testimony at trial.”  Irby v. State, 327 S.W.3d
138, 147 (Tex. Crim. App. 2010). 
While cross-examination about pending charges may in some cases be
appropriate, the Court of Criminal Appeals has emphasized that a “causal
connection” must be demonstrated before such cross-examination is
permissible.  Id. at 149.  Here, Reyes identified appellant in a
photographic line-up the same day the arson occurred, a full year before the
trial.  Reyes’s in-court testimony was
consistent with that earlier identification, and appellant offers no argument
about what incentive or motive Reyes’s status as a probationer—if he was even on probation at the time of his
initial identification of appellant, which was not established—would have prompted him to falsely indentify
appellant.  A witness’s mere status as a
probationer whose guilt has not been adjudicated is insufficient to demonstrate
he or she has the type of vulnerable relationship with the State that is
necessarily relevant to show potential bias and relevance of pending charges.  Id. at 151–52.  Instead, a logical connection between the
alleged bias or motive and the witness’s actual testimony must be affirmatively
shown.  Id.  There was no such
evidence presented to the trial court because appellant did not make a showing
of what Reyes’s testimony would have been. 
See Guidry v.
State, 9 S.W.3d 133, 155 (Tex. Crim. App. 1999) (“Error in the exclusion of
evidence may not be urged unless the proponent perfected an offer of proof or a
bill of exceptions.”).  We
overrule appellant’s third point of error.

CONCLUSION

We affirm the trial court’s
judgment.

 

 

 

                                                                   Sherry
Radack

                                                                   Chief
Justice 

 

Panel
consists of Chief Justice Radack and Justices Bland and Huddle.

Do
not publish.   Tex. R. App. P. 47.2(b).