

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| JOHN WAYNE WISENBAKER III, | § | |
| | | No. 08-19-00034-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | County Criminal Court No. 4 |
| | § | |
| THE STATE OF TEXAS, | | of Tarrant County, Texas |
| | § | |
| Appellee. | | (TC# 1485651) |
| | § | |

**O P I N I O N**

A jury convicted Appellant, John Wayne Wisenbaker, III, of driving while intoxicated. The trial court assessed his punishment at 120-days' confinement but suspended his sentence and placed him on two-years' community supervision with a $1,000 fine. In three issues on appeal, Wisenbaker argues that the trial court abused its discretion by admitting a 911 call in violation of the Confrontation Clause, by disallowing his attempt to impeach an officer, and by disallowing multiple instances of attempted cross-examination of two officers. Finding each of his issues without merit, we affirm the trial court's judgment.[1]

---

[1] This case was transferred to us from the Second Court of Appeals pursuant to the Texas Supreme Court's docket equalization efforts. We follow the precedents from that Court where they might conflict with our own. TEX.R.APP.P. 41.3.

# I. BACKGROUND

Parked on the shoulder of the interstate, Alexia Foster was a semi-truck driver who was resting in her eighteen-wheeler while waiting for traffic to clear up when a pick-up truck hit the side of her eighteen-wheeler. As she looked out, she saw the pick-up stalled in front of her eighteen-wheeler, and she called 911.

Corporal Horner of the Fort Worth Police Department arrived at the scene, spoke to Foster, and then approached the pick-up truck in which Wisenbaker was asleep at the wheel. Corporal Horner knocked on Wisenbaker's window, and once he awoke, Corporal Horner asked him to turn off his vehicle and show his identification and insurance. As he did so, Corporal Horner smelled the odor of alcohol coming from his person, and she proceeded to call for a DWI unit.

Within about ten minutes, Officer Mohajer, a specialized DWI officer, arrived at the scene. Officer Mohajer approached Wisenbaker, saw that his eyes were watery, and smelled an odor of alcohol on him, as well. Wisenbaker told Officer Mohajer that he had been at a brewery with friends where he drank three beers and was on his way to a hotel. Based on the combination of this conversation and the officer's observations, Officer Mohajer performed standardized field sobriety tests (SFSTs) on Wisenbaker. Wisenbaker exhibited enough clues of intoxication to indicate a failure of the horizontal-gaze-nystagmus (HGN) test and the walk-and-turn (WAT) test, but Wisenbaker did not fail the one-leg-stand (OLS) test.

Ultimately, Officer Mohajer arrested Wisenbaker. Once at the jail, Wisenbaker consented to give a breath sample, and his two samples were 0.095 and 0.100 grams of alcohol per 210 liters of breath.

# II. ISSUES ON APPEAL

2

In three issues, Wisenbaker argues that the trial court abused its discretion by: (1) admitting Foster's 911 call in violation of the Confrontation Clause; (2) disallowing his attempt to impeach Officer Mohajer with a prior inconsistent statement; and (3) disallowing multiple other instances of attempted cross-examination of both Corporal Horner and Officer Mohajer. In response to the first issue, the State argues that: (1) Foster's statements on the 911 call were nontestimonial and thus admissible under the Confrontation Clause; and (2) any error in admitting the call was harmless. In response to the second issue, the State argues that: (1) Wisenbaker waived his issue by failing to introduce a copy of the prior, allegedly inconsistent statement into the record for our comparison; and (2) the trial court did not improperly limit Wisenbaker's impeachment under Texas Rule of Evidence 613. And in response to the third issue, the State argues that the trial court's limitation of the complained-of instances of cross-examination was not an abuse of discretion.

### III. DISCUSSION

#### A. Issue 1: Whether the 911 Call was Admissible under the Confrontation Clause

*1. Underlying Facts*

In Foster's 911 call, her voice was relatively calm as she told the 911 operator that someone hit her semi-truck as she was resting inside. She looked out and saw a pick-up truck try to pull away, but apparently, it was unable to do so. Foster informed the dispatcher that her eighteen-wheeler was completely pulled over onto the shoulder, outside the line of traffic, and that someone would have had to drive off the road and onto the shoulder to hit her truck. She described the truck and provided the license plate. In addition, Foster reported that she saw the driver exit, look at his pick-up, and then get back inside, and she observed that the driver might be drunk based on "the

3

way [he] was moving." Throughout the call, the 911 dispatcher's questions were almost entirely directed at learning Foster's location on the highway and learning other facts that would assist officers in easily identifying the two vehicles at issue. Furthermore, the dispatcher did not ask for any information about Wisenbaker's possible intoxication.

*Standard of Review*

A trial court's decision to admit evidence is reviewed under an abuse of discretion standard. *Wall v. State*, 184 S.W.3d 730, 743 (Tex.Crim.App. 2006); *Williams v. State*, 513 S.W.3d 619, 636 (Tex.App.—Fort Worth 2016, pet. ref'd). As long as the trial court's ruling is within the "zone of reasonable disagreement," there is no abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex.Crim.App. 2011); *Williams*, 513 S.W.3d at 637. However, if the admission of evidence involves a constitutional legal ruling, such as whether a statement is testimonial or nontestimonial, the appellate Court gives almost total deference to the trial court's determination of historical facts but reviews *de novo* the trial court's application of the law to those facts. *Langham v. State*, 305 S.W.3d 568, 576 (Tex.Crim.App. 2010); *Williams*, 513 S.W.3d at 637.

*2. Applicable Law*

The Confrontation Clause of the Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. CONT. AMEND. VI; *Crawford v. Washington*, 541 U.S. 36, 42 (2004); *Pointer v. Texas*, 380 U.S. 400, 406 (1965). The Confrontation Clause prohibits the admission of "testimonial" out-of-court statements by a witness who does not appear at trial unless: (1) the witness is unavailable to testify; and (2) the defendant had a previous opportunity to cross-examine the witness.

4

*Crawford*, 541 U.S. 53-54. Once a defendant raises a Confrontation Clause objection, the burden shifts to the State to prove either that: (1) the proffered statement does not contain testimonial hearsay and thus does not implicate the Confrontation Clause; or (2) the statement does contain testimonial hearsay but is nevertheless admissible. *See De la Paz v. State*, 273 S.W.3d 671, 680-81 (Tex.Crim.App. 2008). In the instant appeal, the parties are concerned with only the first avenue for admissibility.

A statement is testimonial if "in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to 'creat[e] an out-of-court substitute for trial testimony.'" *Ohio v. Clark*, 576 U.S. 237, 245 (2015)(quoting *Michigan v. Bryant*, 562 U.S. 344, 358 (2011)). As one example of a situation where the primary purpose of a statement is nontestimonial, the United States Supreme Court held in *Michigan v. Bryant* that the statements made by a victim about his assailant were not testimonial because the circumstances objectively indicated that the conversation was primarily aimed at enabling police assistance to meet an ongoing emergency, not establishing evidence for the prosecution. *Bryant*, 562 U.S. at 377-78; *see also Clark*, 576 U.S. at 245. Ultimately, where the primary purpose of an out-of-court statement was not to create an out-of-court substitute for trial testimony, the out-of-court statement is nontestimonial, and the Confrontation Clause is simply not implicated. *See Clark*, 576 U.S. at 245.

Notably, 911 calls initiated to summon police assistance are generally nontestimonial because they are "a cry for help" or "the provision of information enabling officers to end a threatening situation." *See, e.g.*, *Duchesneau v. State*, Nos. 02-18-00321-CR, 02-18-00322-CR, 2019 WL 2455619, at *2 (Tex.App.—Fort Worth June 13, 2019, pet. ref'd)(mem. op., not designated for publication)(quoting *Davis v. Washington*, 547 U.S. 813, 832 (2006)); *Ex parte*

5

*Salcido*, No. 08-19-00178-CR, 2020 WL 1861967, at *8 (Tex.App.—El Paso Apr. 14, 2020, pet. ref'd)(not designated for publication).

### 3. Application

Here, the circumstances show that Foster's conversation with the 911 dispatcher was aimed at addressing an ongoing emergency. Foster called 911 because a pick-up had hit her eighteen-wheeler even though Foster had completely pulled over onto the highway shoulder and outside the line of traffic. Foster observed that the pick-up must have driven completely off the road to strike her eighteen-wheeler and that the driver might have been drunk based on "the way [he] was moving." She also saw that the driver tried to pull away, but was unable to do so. Prompting a level of concern that caused Foster to call 911, these observations demonstrate that an ongoing emergency existed where a possibly intoxicated driver veered entirely off the roadway, struck her eighteen-wheeler, and afterwards, attempted to drive away despite the hazardous and potentially life-threatening collision he had just caused. *See Ford v. State*, No. 08-14-00093-CR, 2016 WL 921385, at *4 (Tex.App.—El Paso Mar. 9, 2016, pet. ref'd)(not designated for publication) (holding that an ongoing emergency existed where the 911 caller described a situation involving an intoxicated driver who was a danger to the general public on the roadway).

Furthermore, the 911 dispatcher's questions to Foster were not aimed at confirming the precise details of any potentially criminal activity on the part of the pick-up driver, but instead, the dispatcher's questions were aimed almost entirely at enabling police to better quell the situation. Ultimately, nothing about Foster's statements to the dispatcher, or the dispatcher's precise questioning, indicated that the primary purpose of the conversation on the 911 call was anything other than an attempt to enlist police assistance in addressing a vehicular collision involving a

6

driver who posed a possible danger to himself and others. And while we acknowledge that Foster spoke in a relatively calm manner during her 911 call, we do not find that this feature alone colors the entirety of the conversation in such a way that transforms the essential help-seeking nature of the call based on all the other circumstances. *See Ford*, 2016 WL 921385, at *4 (declining to conclude that the 911 caller's "very calm" manner during her call compelled a conclusion that she was not in an ongoing emergency where other circumstances indicated that an ongoing emergency existed).

Therefore, we hold that Foster's 911 call was nontestimonial because the primary purpose of her call was not to create an out-of-court substitute for trial testimony. *See Clark*, 576 U.S. at 245; *Bryant*, 562 U.S. at 377-78; *see also, e.g.*, *Duchesneau*, 2019 WL 2455619, at *2; *Ex parte Salcido*, 2020 WL 1861967, at *8 (cases holding that calls initiated to summon police assistance are generally nontestimonial because they are "a cry for help" or "the provision of information enabling officers to end a threatening situation"). And the trial court did not abuse its discretion in admitting the call because it did not implicate the Confrontation Clause. *See De la Paz*, 273 S.W.3d at 680-81. For this reason, we overrule Wisenbaker's first issue presented for review.

**B. Issue 2: Whether the Trial Court Abused its Discretion by Limiting Wisenbaker's Impeachment of Officer Mohajer with a Prior Inconsistent Statement**

*1. Underlying Facts*

During cross-examination of Officer Mohajer about Wisenbaker's performance on the SFSTs, Wisenbaker attempted to impeach him with an inconsistent statement from a prior date. Wisenbaker attempted to elicit a concession that Officer Mohajer had previously testified on that prior date that Wisenbaker "did fairly all right" on the WAT test. However, during the attempt, the trial court sustained multiple relevance objections by the State. And when Officer Mohajer did

answer cross-examination questions, he testified that he did not recall making the statement when counsel attempted to complete the line of inquiry and that the document shown to him by Wisenbaker appeared to be "just a typed up paper." Eventually, Wisenbaker ceased asking further questions about that particular statement before moving on to asking about other portions of the SFSTs. At trial, Wisenbaker never sought to introduce the alleged inconsistent statement into the record or to make an offer of proof on the matter.

*Applicable Law*

A witness's prior inconsistent statement may be admitted if the questioning attorney first lays a proper predicate under Texas Rule of Evidence 613. *See* TEX.R.EVID. 613(a)(1)-(4); *Rasberry v. State*, Nos. 02-14-00128-CR, 02-14-00141-CR, 2015 WL 6081891, at *13 (Tex.App.—Fort Worth Oct. 15, 2015, pet. ref'd)(mem. op., not designated for publication). But the prior statement must actually be inconsistent with the witness's trial testimony. *See* TEX.R.EVID. 613(a); *Rasberry*, 2015 WL 6081891, at *13.

To preserve error when a trial court excludes evidence, a party must show the substance of the excluded evidence by an offer of proof unless the substance is apparent from the context of the questions asked. *See* TEX.R.APP.P. 33.2; TEX.R.EVID. 103(a)(2); *Holmes v. State*, 323 S.W.3d 163, 168 (Tex.Crim.App. 2009); *Pabon v. State*, No. 02-18-00517-CR, 2019 WL 4122611, at *4 (Tex.App.—Fort Worth Aug. 29, 2019, no pet.)(mem. op., not designated for publication). The primary purpose of the offer of proof is to enable an appellate court to determine whether the exclusion was erroneous and harmful. *Holmes*, 323 S.W.3d at 168.

2. *Application*

In this case, Wisenbaker attempted to impeach Officer Mohajer with an allegedly

inconsistent statement made by the officer on a prior date. From Wisenbaker's questions on cross-examination, he apparently desired to elicit a concession from Officer Mohajer that Wisenbaker "did fairly all right" on the WAT test. However, notwithstanding from the portions of cross-examination where the trial court sustained multiple objections from the State, Officer Mohajer testified that he did not recall making the alleged inconsistent statement. And fatal to Wisenbaker's claim on appeal, Officer Mohajer further testified that the document shown to him at trial – presumptively, the written version of the prior inconsistent statement – appeared to be "just a typed up paper." Simply, there is no indication in the record about whether Officer Mohajer, in fact, made such an inconsistent statement that was recorded in writing. And Wisenbaker never sought to introduce the prior statement into the record.

Consequently, we are unable to review whether the trial court abused its discretion by disallowing Wisenbaker's attempted impeachment of Officer Mohajer because the record does not show if, under Rule 613, a prior inconsistent statement exists. *See* TEX.R.EVID. 613(a); *Rasberry*, 2015 WL 6081891, at *13 (holding that a prior statement under Rule 613 must actually be inconsistent with the witness's trial testimony). And as Wisenbaker has not supplied the record with a showing that an actual inconsistent statement exists or the precise substance of the statement, we hold that he failed to preserve this issue for review. *See* TEX.R.APP.P. 33.2; TEX.R.EVID. 103(a)(2); *Holmes*, 323 S.W.3d at 168; *Pabon*, 2019 WL 4122611, at *4; *see also Littlepage v. State*, Nos. 02-09-00193-CR, 02-09-00194-CR, 2010 WL 5118298, at *4 (Tex.App.—Fort Worth Dec. 16, 2010, pet. ref'd)(mem. op., not designated for publication) (holding that error in the exclusion of evidence is not preserved if the offer of proof is inadequate). Accordingly, we overrule Wisenbaker's second issue presented for review.

**C. Issue 3: Whether the Trial Court Abused its Discretion by Limiting Cross-examination**

*1. Underlying Facts*

Within this issue, Wisenbaker contends that there were three additional instances, aside from the trial court's above-discussed limitation on his impeachment of Officer Mohajer, in which the trial court erred by limiting his cross-examination.

During cross-examination of Corporal Horner, Wisenbaker asked Sergeant Horner whether she was at trial to help the State, but the trial court sustained the State's relevance objection.

And during cross-examination of Officer Mohajer about the HGN test, Wisenbaker first got Officer Mohajer to acknowledge that he was not an "expert on the eyes" before Wisenbaker asked whether Officer Mohajer knew how many muscles were in an eye and whether Officer Mohajer had read studies about eyes. Again, the trial court sustained the State's relevance objections to both of those follow-up questions. Finally, Wisenbaker asked Officer Mohajer to turn and look at the "scales of justice" behind him in the courtroom, but the trial court again sustained the State's relevance objection. Nonetheless, Wisenbaker was then able to ask Officer Mohajer to use a scale – like that embodied within the scales of justice – to describe the relative weight of each SFST result in assessing whether a person is intoxicated.

*2. Standard of Review*

A trial court's decisions concerning the admission or exclusion of evidence and concerning the extent of cross-examination are reviewed under an abuse of discretion standard. *Pantoja v. State*, 496 S.W.3d 186, 191 (Tex.App.—Fort Worth 2016, pet. ref'd). As noted above, a trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Id*.

*3. Applicable Law*

10

A defendant is entitled to pursue all avenues of cross-examination reasonably calculated to expose a motive, bias, or interest for the witness to testify, and therefore, the scope of appropriate cross-examination is necessarily broad. *Carroll v. State*, 916 S.W.2d 494, 497 (Tex.Crim.App. 1996); *Smith v. State*, 352 S.W.3d 55, 64 (Tex.App.—Fort Worth 2011, no pet.). But this does not mean that a defendant can explore every possible line of inquiry. *Smith*, 352 S.W.3d at 64; *Walker v. State*, 300 S.W.3d 836, 844 (Tex.App.—Fort Worth 2009, pet. ref'd). Rather, "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." [Emphasis in original]. *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) *see also Johnson*, 490 S.W.3d 895, 909-10 (Tex.Crim.App. 2016). Trial courts retain "wide latitude" under the Confrontation Clause to impose restrictions on cross-examination based on criteria such as "harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *see also Johnson*, 490 S.W.3d at 910.

As a predictable consequence, the attempted introduction of irrelevant evidentiary matters cannot be a proper goal of cross-examination. *See Woods v. State*, 152 S.W.3d 105, 111 (Tex.Crim.App. 2004); *Smith*, 352 S.W.3d at 64 (cases observing that the proponent of evidence on cross-examination must show that such evidence is relevant). Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence. TEX.R.EVID. 401.

4. *Application*

11

In this case, none of the complained-of instances in which the trial court limited Wisenbarker's cross-examination amounted to an abuse of discretion. Regarding the trial court's limitation on Wisenbaker's impeachment of Officer Mohajer with a prior inconsistent statement, this complaint is unreviewable for the reasons discussed in our resolution of his second issue in this appeal. Thus, we cannot say that the trial court abused its discretion in this instance.

Regarding the trial court's limitation on Wisenbaker's question to Corporal Horner about whether she was at trial to help the State, we first observe that any answer to that question would arguably be irrelevant because it would not bear on a fact of consequence to determining whether Wisenbaker was intoxicated. *See* TEX.R.EVID. 401. At the very least, the trial court would not have been outside the zone of reasonable disagreement to so find. *See Pantoja*, 496 S.W.3d at 191 (instructing that a trial court does not abuse its discretion in an evidentiary ruling so long as its decision does not lie outside the zone of reasonable disagreement). But second, any answer to this question would have lied within the "wide latitude" given to the trial court to restrict cross-examination based on "interrogation that is . . . only marginally relevant." *See Van Arsdall*, 475 U.S. at 679; *see also Johnson*, 490 S.W.3d at 910. Thus, we hold that the trial court did not abuse its discretion in this second instance either.

Regarding the trial court's limitation on Wisenbaker's questions to Officer Mohajer about muscles in the eyes and studies about eyes, we find that any answers to these questions would have carried, at most, marginal relevance where Officer Mohajer already testified that he was not "an expert on the eyes[.]" Essentially, Wisenbaker already established that Officer Mohajer was not particularly knowledgeable on the in-depth workings of the HGN test. And again, the trial had "wide discretion" to disallow such questions that were repetitive or only marginally relevant. *See*

12

*Van Arsdall*, 475 U.S. at 679; *Johnson*, 490 S.W.3d at 910. Thus, we hold that the trial court did not abuse its discretion in this third instance, as well.

Regarding the trial court's final limitation on Wisenbaker's request to Officer Mohajer to look at the "scales of justice" in the courtroom, any answer to this question likewise lied within the "wide latitude" given to the trial court to restrict cross-examination based on marginally relevant inquiries. *See Van Arsdall*, 475 U.S. at 679; *Johnson*, 490 S.W.3d at 910. This is especially so where the trial court elsewhere allowed Wisenbaker to cross-examine Officer Mohajer with questions that referenced the scales of justice. We thus likewise hold that the trial court did not abuse its discretion in this fourth and final complained-of instance.

Of course, we can appreciate the intricacies and art of trial strategy that will be attempted by defense counsel who are tasked with the formidable task of convincing a jury or judge that a client is innocent of the charges laid against them. Our holdings within this third issue are not meant to endorse a precedent establishing that the questions asked by Wisenbaker here could never be relevant in all the possible factual scenarios that may arise in any given trial. To the contrary, our holdings are meant to endorse only the viewpoint that it would not be outside the zone of reasonable disagreement for a trial court to find that such instances of attempted cross-examination were irrelevant or bore only marginal relevance under these circumstances, even though another trial court's ruling might situate elsewhere along that wide band of discretion. *See Pantoja*, 496 S.W.3d at 191 (instructing that a trial court does not abuse its discretion in an evidentiary ruling so long as its decision does not lie outside the zone of reasonable disagreement); *cf. State v. Villegas*, 506 S.W.3d 717, 753 (Tex.App.—El Paso 2016, pet. dism'd, improvidently granted)("*Montgomery* recognizes that a trial judge's relevance determination will largely hinge

13

upon that 'judge's perception of common experience' while also cautioning appellate courts to stay their hand if '[r]easonable men may disagree whether in common experience a particular inference is available' so as to avoid substituting one reasonable inference for another and thereby 'commandeering a function institutionally assigned elsewhere.'")(quoting *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990)).

Having held that none of the complained-of limitations on cross-examination constituted an abuse of discretion, we accordingly overrule Wisenbaker's third and final issue presented for review.

## IV. CONCLUSION

The trial court's judgment is affirmed.

November 23, 2020

YVONNE T. RODRIGUEZ, Justice

Before Alley, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)